**LANGHORNE v. CAPITAL FIRE INS. CO.
OF CALIFORNIA.**
Civil Action No. 589.

District Court, D. Minnesota,
Fourth Division.

March 16, 1944.

Bowen & Bowen and Leroy Bowen, all of Minneapolis, Minn., for defendant, in support of the motions.

Carleton, Cherry & Norton and Henry W. Norton, all of Minneapolis, Minn., for plaintiff, in opposition thereto.

NORDBYE, District Judge.

The above-entitled cause came before the undersigned, one of the the Judges of the above-named Court, on the motion of the defendant for an order setting aside the verdict and answers to the interrogatories heretofore returned by the jury and directing judgment in favor of the defendant, and in the event of the denial of said motion that defendant be granted a new trial herein. In the event said motions be denied, the defendant moved in the alternative for an order suspending the entry of any judgment in favor of the plaintiff herein and restraining the issuance of any execution or any other

process for the enforcement of said judgment in favor of plaintiff until the plaintiff shall have conveyed and caused to be conveyed by good and sufficient deed, subject only to the contract for deed to Christine Peterson, the property referred to herein and all right, title and interest of plaintiff and his wife therein; and in the event plaintiff failed to so do, within the time specified by the Court, that judgment be entered in favor of the defendant in the same manner and with the same effect as though the verdict herein were in favor of the defendant. Said motions and each of them were based on the several grounds set forth in the notice of motion.

The Court having considered said motions, the arguments of counsel, and the briefs filed by said parties, and upon all the files and records herein.

It is ordered: That said motions, and each of them, be and the same hereby are in all things denied.

An exception is allowed to the defendant.

### Memorandum.

Defendant's motion for judgment notwithstanding the verdict is primarily predicated on the following grounds: (1) That the open mortgage clause in the policy of insurance prevents plaintiff from maintaining this action; (2) that the action has been tolled by the statute of limitations; (3) that plaintiff is not the real party in interest under Rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, nor was the vendee in the contract for deed joined as required by Rule 19 of said rules; and (4) that the jury's answers to the fourth and fifth interrogatories are false as a matter of law. The grounds for the motions as stated above will be considered in the order recited.

I. This Court has heretofore had occasion to construe the terms of this policy in so far as they pertain to the rights of a vendor under the contract for deed, and has held that the policy provides for an open mortgage clause, as distinguished from a union mortgage clause. Langhorne v. Capital Fire Insurance Co., D.C., 1942, 44 F.Supp. 739. The policy declared that the loss, if any, is payable to the plaintiff and Christine Peterson as their interests may appear. Langhorne is a vendor under the contract for deed, and Christine Peterson is the vendee. It is conceded that Christine Peterson is the insured, and that, under the contract, plaintiff is only entitled to the

proceeds of insurance to the extent of his interest at the time of the loss. Moreover, it has been stipulated that plaintiff's interest as vendor at the time of the fire amounted to $3,640.97 and that the loss by fire exceeded that sum. The extent to which the loss may have exceeded that sum is not made to appear, but it does appear that, subsequent to the bringing of this action, the vendee did institute an action in this Court against the defendant to recover on this same policy and as a result of the same fire. That suit, however, was dismissed on defendant's motion because this Court lacked jurisdiction. When the dismissal was ordered, the statute of limitations had run against the institution of another suit in her behalf, and, by reason thereof, she is now barred from asserting any claim under the policy. After the statute of limitations had run against Christine Peterson, the defendant herein for the first time amended its answer challenging plaintiff's right to institute and maintain this action in his own behalf. It is defendant's present position that, under an open mortgage clause such as we have here, the vendor, Langhorne, cannot maintain an action under the loss payable clause as is contained in his policy, because it is contended that there is but one cause of action and as the amount of loss exceeds the amount due Langhorne, the maintenance of this suit by Langhorne would be splitting the cause of action. That is, according to the defendant, there being only one cause of action and both the vendor and vendee having claims to the proceeds of insurance, the maintenance of an action by the vendor alone would result in the splitting of the cause of action and therefore such suit cannot be maintained.

The right of the plaintiff under the policy to maintain this suit must be determined by the Minnesota decisions. That there is a conflict of authority on the proposition urged by the defendant is quite apparent; at least, the States of Wisconsin and Alabama seem to support the rule urged by the defendant. But the policy in question was written in the State of Minnesota and under the laws of that State. This action was originally instituted in the State Court and jurisdiction herein is based on grounds of diversity of citizenship. The rights of the parties under the policy, therefore, must be determined in light of the Minnesota decisions which have considered comparable questions. It seems that Minnesota recognizes that, when a third party

beneficiary institutes an action under a third party beneficiary contract, he does not sue on an independent contract, but rather rests his action on a contract made for his benefit. La Mourea v. Rhude, 1939, 209 Minn. 53, 295 N.W. 304. In the instant situation, the defendant and Christine Peterson made a contract for the benefit of Langhorne. That contract was a simple contract whereby it was agreed that, in case of loss by fire, the proceeds should be paid to Christine Peterson and Langhorne as their interests should appear. As hereinbefore stated, it is conceded that Langhorne has an interest in the insurance proceeds to the extent of $3,640.97. This action was instituted to recover that sum. No attempt was made by defendant to join Christine Peterson in this action. It never requested that she be made a party defendant herein, as it could have done under the Federal Rules of Civil Procedure. Certainly, she would be a proper party. See, Ermentrout v. American Fire Ins. Co., 60 Minn. 418, 62 N.W. 543. On the contrary, when Christine Peterson sought to obtain her alleged interest in the insurance proceeds, a dismissal was obtained at defendant's instance, and her right to claim any part of the insurance proceeds is now forever barred.

Plaintiff's right to maintain this action as a third party beneficiary certainly is recognized by the views expressed in Maxcy v. New Hampshire Fire Ins. Co., 54 Minn. 272, 55 N.W. 1130, 40 Am.St. Rep. 325. In the Maxcy case, "this loss or damage, if any," was payable to the "mortgagee, as her interest might appear." Regarding the insurance company's contention that the mortgagee could not sue without joining the mortgagor, the court stated (pages 275, 276 of 54 Minn., page 1130 of 55 N.W., 40 Am.St.Rep. 325):

"There was no defect of parties [plaintiff]. A policy of insurance, by the terms of which a loss thereunder is made payable to a mortgagee, is a contract for the benefit of such mortgagee; and he can enforce the liability in his own name, and without joining the insured. It is a sound doctrine, applicable to simple contracts generally, and to contracts of insurance, that if one make a promise to another for the benefit of, and available to, a third person, the latter can maintain an action upon the promise in his own name. A mortgagee is entitled to recover the full amount of insurance, in case of loss, if such insurance does not exceed the amount due upon and secured by the mortgage. (Citing cases). * * * And in the case of Graves v. [American Livestock] Ins. Co., 46 Minn. 130, 48 N.W. 684, this court assumed such to be the law; * * *. Of course, * * * the insured owner of the property * * * might be allowed to intervene in the action, upon proper motion, or, at the instance of the defendant company, * * * might be compelled to interplead and take part in the litigation; but this does not demonstrate anything more than that, under some circumstances, one or both might be proper parties to the action; not that either is a necessary party to the controversy."

Defendant seeks to avoid the rule in the Maxcy case, contending that the court was in fact dealing with a union mortgage clause rather than an open mortgage policy. It is true that, while the court in its opinion made no mention of it, the policy was written in language which did create that which in effect must be recognized as a union mortgage clause; that is, at least the mortgagee could recover the insurance up to the amount of his interest regardless of any acts or conduct on the part of the mortgagor or owner. But whatever view the Minnesota court may have entertained at that time regarding the effect of the use of a so-called union mortgage clause, it is clear that the decision only assumed to determine the rights of a mortgagee to recover on a policy of insurance without joining the mortgagor where the rights of the mortgagee depended on his interest at the time of the loss. It must be obvious that, if the court assumed that it was dealing with a mortgagee who had an independent contract with the insured, as some courts have characterized the rights of a mortgagee under a union mortgage clause, the reasoning assigned by the court for its conclusion would be entirely foreign to such an assumption. In other words, a reading of the Maxcy case impels the view that the Minnesota Supreme Court assumed to enunciate a rule which would govern the rights of a mortgagee who sought to enforce his rights as a third party beneficiary to a contract of insurance and not one who had an independent contract with the insurer. Any other view would result in a complete distortion of the court's reasoning and teachings therein. True, the court did cite cases involving union mortgage clauses in support of the rule announced, but it also cited cases involving open mortgage clauses, including Motley v. Manufacturers' Ins. Co.,

29 Me. 337, 50 Am.Dec. 591. In fact, its holding contained almost verbatim the language of the Motley case. Moreover, the mere fact that in the Motley case the policy did not contain the words "as his interest may appear" is of doubtful significance as to the question now under discussion, for the open mortgage clause in Tilley v. Connecticut Fire Ins. Co., 86 Va. 811, 11 S.E. 120, also cited by the court, *does* contain these words. Likewise, Graves v. American Live-Stock Ins. Co., 46 Minn. 130, 48 N.W. 684, upon which the court relied heavily, involved an open mortgage clause which contained these words. Consequently, the court's citations seem to disclose nothing which tends to indicate that the court did not intend to enunciate the rule which it did.

██ The rule in the Maxcy case must be considered as the rule in this State which applies to an open mortgage clause; otherwise, we would be confronted with diverse rules for the same factual situation. That is demonstrated by the opinion of the court in the later case of Magoun v. Firemen's Fund Ins. Co., 1902, 86 Minn. 486, 91 N.W. 5, 91 Am.St.Rep. 370. This case considered the statutory union mortgage clause. The court there held that such a clause created an independent contract between the mortgagee and the insured. In effect, it was held that the mortgagee himself was an insured. However, in a third party beneficiary contract situation, which the court found to exist in the Maxcy case, the beneficiary does not sue on an independent contract. He rests his action on a contract which the mortgagor and the insured made for his benefit. Moreover, in a third party beneficiary contract, the defenses to the validity of the contract which the insurer (promisor) possessed against the promisee (insured) would be good as against the beneficiary, 17 C.J.S., Contracts, § 529, p. 1152, while under a union mortgage clause, the defenses which an insurer possesses against a mortgagor on a separate contract of insurance would not be good as against the mortgagee merely because they existed as against the mortgagor. It may be noted that, in the Magoun case, the Maxcy case is not mentioned. Certainly, no intent to overrule the latter case seems impliedly evident, and a reading of the subsequent Minnesota cases does not indicate any views of the court which overrule or modify the rules enunciated in the Maxcy case as applicable to an open mortgage clause and the rule enunciated in the Magoun case as being applicable to a union mortgage clause. Nor does the fact that plaintiff's right herein as a vendor under a contract for deed is conditional, militate against his rights as a third party beneficiary. In La Mourea v. Rhude, supra, it was stated (page 55 of 209 Minn., page 306 of 295 N.W.): "It is no bar to recovery by the beneficiary, if he be donee or creditor of the promisee, that the promise in his favor is conditioned, as here, upon a future event, such as damage to his property." The appointment of Langhorne to receive the insurance proceeds is, of course, a limited or conditional appointment, but it means nothing more than that the vendor must establish an interest in the property. If he has none, he cannot recover. If his interest exceeds the insurance, he will receive the entire sum; if less, to the extent of his interest.

██ Defendant seeks to further distinguish the Maxcy case because it appears therein that the mortgagee's interest in the property exceeded the loss by fire and hence there would be no splitting of the cause of action, as the only one who could recover would be the mortgagee. However, the court's statement in the Maxcy case to the effect that the mortgagee therein could maintain an action for the full amount of the policy because his claim exceeded that amount, must be weighed in light of the fact that the mortgagee's interest *was greater* than the amount of the policy. It would be an unwarranted construction of the language to hold that a mortgagee could not bring an action in his own name as a third party beneficiary *unless* his claim exceeded the amount of the policy. But if there is merit to defendant's position that a mortgagee cannot maintain an action as a third party beneficiary under an open mortgage clause unless his claim exceeds the amount of the loss, are we not confronted in the instant situation with substantially that factual situation? At the time of this trial, the only person who could recover on this policy was the plaintiff. Christine Peterson was forever barred from asserting any claim on the cause of action under the policy and that position is stoutly maintained by the defendant because it asserts that one of the reasons why plaintiff should be non-suited is because Christine Peterson has finally and completely lost her right in and to the cause of action accruing to her by reason of the loss under this policy. If, therefore, no one but plaintiff can recover on the cause of action which has arisen by reason of this fire, how can it be successfully asserted that

the cause of action is being split? If, as defendant apparently recognizes, a mortgagee can maintain a suit under an open mortgage clause where his claim exceeds the loss, such principle must be predicated on the theory that the cause of action is not split because it inures entirely to the benefit of the mortgagee. Christine Peterson, by permitting the statute of limitations to run against her, effectively disabled herself from ever asserting any claim under the policy, and the result, therefore, is to place in plaintiff the sole and exclusive right to collect the entire recovery on the cause of action. That is, plaintiff will recover the entire insurance to be paid by reason of this loss as effectively as if his interest exceeded the loss. There will be only one recovery. At the time of this trial, the defendant was required, and will only be required to defend one cause of action, and that is the one that is now being asserted by Langhorne. As a practical matter, and viewed realistically, defendant has elected to defend the claims on this policy separately. It neglected to make Christine Peterson a party herein. It concluded to defend one claim by plaintiff to trial and verdict—the other by Christine Peterson to a dismissal which has forever barred her rights in and to the policy.

If, therefore, under an open mortgage clause, a third party beneficiary can maintain an action without joining the promisee, if it does not result in a splitting of the cause of action, it must follow that the failure of Christine Peterson to bring an action within the period permitted by the insurance contract cannot affect plaintiff's rights as a third party beneficiary. The validity of the policy is extant. The statute of limitations only goes to the remedy and not to the right. Standard Salt & Cement Co. v. National Surety Co., 134 Minn. 121, 126, 158 N.W. 802. While the defenses as against the validity of the policy which the insurer has against the insured can be asserted against a third party beneficiary, it necessarily follows that if a third party beneficiary may bring an action in his own right without joining the insured, the loss of the right to enforce benefits which only inure to the insured cannot militate against the rights of the third party beneficiary. The applicability of the statute of limitations must be determined as of the time that this action was brought. When plaintiff brought this action, the statute of limitations had

not barred the right of either party. The views which this Court expressed in 44 F.Supp. 739 are in no way inconsistent with the conclusions reached herein under the finding of the jury. The validity of the contract of insurance has in no way been affected by any of the acts of the insured. Assume, for instance, that Langhorne's interest did exceed the loss by fire. Under these circumstances, it is conceded that he could bring an action to recover his loss under an open mortgage policy without joining the insured. It must follow that, under that assumed state of facts, if the insured failed to bring any action within the time limited by the policy, such failure would not lessen the rights of Langhorne. For the same reason, where it appears that Langhorne may now bring an action on this policy without joining Christine Peterson because he is a third party beneficiary, and further because there will be no splitting of the cause of action if he is permitted to sue for the proceeds of the policy which belong to him, the mere fact that Christine Peterson by her own neglect is successfully barred from asserting any rights under the policy, cannot diminish or affect plaintiff's contract rights.

In view of the foregoing, it would seem that defendant's contention that plaintiff is not the real party in interest under Rule 17 of the Federal Rules of Civil Procedure, is without merit in that plaintiff is seeking merely to enforce his right—no one else's—to the proceeds of the insurance policy as the real party in interest. Furthermore, defendant's contention that Christine Peterson is a necessary party under Rule 19 of the Federal Rules of Civil Procedure is equally untenable. It contends that because Christine Peterson would be a trustee of whatever she would recover for the plaintiff in a suit in which she sues for all the insurance, and since trustees of express trusts are indispensable parties, she must be joined. But it seems obvious that Christine Peterson is not a trustee of an express trust, for there is no trust agreement and she is not going to receive any money belonging to the plaintiff. True, if she did receive money belonging to the plaintiff she would be a trustee by operation of law, but such relationship, that is, of a constructive trustee, would not come into being until she obtained the res, that is, the money. She is not, therefore, an indispensable party under Rule 19, and moreover, in that plaintiff is

suing in his own behalf and for his own interest, it seems impossible that she could become in any way a trustee of any money to which he might be entitled.

In passing, it may be noted that a reading of Ermentrout v. American Fire Ins. Co., supra, upon which defendant relies in contending that plaintiff cannot bring this action without joining Christine Peterson, does not indicate that it is helpful to the contention urged by the defendant. It is clear that that case simply involved the question of whether a mortgage and mortgagor *could be* joined in an action for the recovery of insurance where an open mortgage clause governs. The instant case and the Maxcy case go to the question of whether they *must be* joined. Nothing in the Ermentrout case seems inconsistent with any of the conclusions reached in the Maxcy case.

The fourth interrogatory which was submitted to the jury reads as follows:

"On December 30, 1940, when Christine Peterson made out her sworn proof of claim, did she knowingly and intentionally make a false statement when she stated therein that she was unable to state the manner in which the fire originated?"

■■■■ This question was answered in the negative by the jury, and defendant now contends that judgment notwithstanding the verdict should be entered because that answer is false as a matter of law. It should be remembered that when the Court submitted this question to the jury it instructed the jury to consider all of the evidence, and presumably the jury considered the entire answer which Christine Peterson gave to the question in the proof of loss. Her entire answer was:

"That your affiant is unable to state the manner in which said fire originated, but it is claimed that such fire was of an incendiary origin."

Certainly, if Christine Peterson was a party to the setting of the fire, as Anderson claimed, her answer would be false, but the jury found her innocent of any connection with this fire. If her testimony at this trial is true, and all she knew about the fire was that which she had been told, it must be evident that it was not incumbent upon her in making out a proof of loss to charge Anderson with the crime, or to go into any details as to what she had heard. She did state that it was claimed that the fire was of an incendiary origin.

If she is innocent, as the jury found, then that answer does not reflect any false statement or fraud. Substantial compliance with the terms of the policy as to the proof of loss is sufficient. DeRaiche v. Liverpool & London & Globe Ins. Co., 1901, 83 Minn. 398, 86 N.W. 425. If the findings of the jury which unequivocally establish that she did not aid or assist Anderson in the setting of the fire and that she had no part in any plan, scheme or arrangement to burn this property, and further that her actions and conduct in connection with the fire did not constitute a willful and intentional attempt to defraud the insurance company, it must follow that the answer to the interrogatory which is now challenged cannot be urged as grounds for judgment notwithstanding the verdict; that is, if her answers to interrogatories 1, 2 and 3 are to be sustained, it would be manifest error to hold that the answer to interrogatory 4 is false.

■■■■ The answer to the fifth interrogatory is also challenged as conclusively false. This interrogatory queried whether Miss Peterson's statement in her proof of loss that the property was wholly destroyed and there was no salvage therefrom or therein was made with intent to defraud defendant. A fair construction of the question which she answered requires a finding that it refers to the value of the building after the fire; that is, what salvage could be recouped from the burned building. Defendant seeks to prove the falsity of Christine Peterson's answer by predicating certain assumptions based on answers made by Langhorne in his proof of loss as to the value of the land and buildings before the fire. The entire argument falls, however, when it is remembered that Langhorne gave the value of $7,500 before the fire in his proof of loss. He explained in his deposition that, at the time he made out his proof of loss, he was attempting to appraise both the land and the buildings. His estimate in this regard may be too high; on the other hand, it may be too low. In any event, it is not binding upon Miss Peterson in so far as the question of her alleged fraud is concerned. There is no evidence as to what salvage could be obtained from the burned dwelling house. The photographs indicate that, while the house was gutted by fire, the outside walls at least were standing. That the inside of the building was severely damaged and that one floor had fallen into the basement appears from the evidence.

Apparently Christine Peterson concluded that the house had no salvage value. She may have been mistaken in this regard, but that fact alone does not necessarily stamp her answer as fraudulent. The question as to the amount of salvage to be obtained from an old house that has been burned and gutted by fire usually results in a difference of opinion, at least among inexperienced persons. It must be reiterated that if she had nothing to do with the fire, it is difficult to understand what fraudulent motive she could have had in making such a statement. The house stood there for the inspection of the defendant's insurance adjusters as well as her own. It may have been an inaccurate expression of opinion as to the results of the fire, but as stated in Hodge v. Franklin Ins. Co., 111 Minn. 321, 324, 126 N.W. 1098, 1099:

"A discrepancy, even of very considerable proportion, between the amount stated by the insured in the proofs of loss and the value found by the jury, does not conclusively establish fraud or false swearing; but it remains a question of fact whether the overvaluation was intentionally fraudulent or merely an error of judgment."

It must be evident that the jury concluded that, if there was any salvage, Christine Peterson's statement to the contrary was merely an error in judgment and opinion and not intentionally fraudulent. In any event, the Court cannot say as a matter of law that she fraudulently intended to deceive the defendant company.

■ II. Defendant, in the alternative, requests that it be granted a new trial. Contradictions are pointed out in Christine Peterson's testimony, and it is asserted that the statements she made on the stand are in many instances sharply at variance with those given by Anderson, Derifield, Glascock, and others. But notwithstanding the discrepancy and variance, her testimony may be true. Certainly, such discrepancies and inconsistencies which defendant points out do not in and of themselves require a finding that reasonable men could only arrive at one conclusion as to her connection with the fire. The Court took pains to frame interrogatories which the jury would be required to answer so as to insure as far as possible that the controlling fact questions would receive their attention and consideration. If the Court had been sitting as the trier of the fact, the first three interrogatories would have been answered in the affirmative. The jury, however, answered these questions so as to absolve Christine Peterson of any connection with the fire. In the last analysis, it was a pure fact question for the jury to determine. There was an entire absence of any circumstance during the trial which was in any way prejudicial to the defendant. It has received a fair trial and was defended by counsel of outstanding ability. While the Court disagrees with some of the conclusions reached by the jury, it does not feel that the verdict is so contrary to the weight of the evidence that it cannot stand. It must be recognized that there is substantial evidence which the jury must have believed and which supports its findings. The Court is constrained, therefore, to refrain from disturbing the jury's verdict. The jury, as the law contemplates, has set at rest the factual controversy in this matter between the parties.

■ III. Defendant argues that it is entitled to be subrogated to plaintiff's rights. However, defendant's rights to be subrogated to the plaintiff's rights as vendor seem determined by the rule stated in 26 C.J. 461, which is supported by the numerous cases cited in footnote 57 and in corresponding annual annotations. Section 625 provides:

"Where the policy, both on its face and by the intention of the parties, insures the mortgagor, as where it is taken by the mortgagor for his own benefit, or *payable to the mortgagee as his interest may appear*, or by the mortgagee in the mortgagor's interest, and at his expense, payment of the insurance money to the mortgagee goes to the benefit of the mortgagor in satisfaction pro tanto of the mortgage debt, and the insurer is *not* entitled to subrogation to the rights of the mortgagee as against the mortgagor, unless the policy contains an express stipulation that the insurer shall be so subrogated." (Italics supplied.)

The rule has also been stated more briefly as follows:

"If, however, the policy contains no stipulation for [the] subrogation in case of payment to the mortgagee, and there is any arrangement between the mortgagor and the mortgagee, either verbal or written, by which the mortgagor becomes liable to pay for the insurance, he is entitled to the benefit thereof, and to have it applied in liquidation of the mortgage debt pro tanto, and his right in this respect does not depend upon the fact that he has paid

for the insurance, nor whether the mortgagee procured the insurance, intending to look to the mortgagor for reimbursement of the premium; but it depends upon whether he is liable to the mortgagee therefor under any agreement, express or implied. And in such case, if the insurer receives the premium knowing it is paid by the mortgagor, or for him, he will not, in the absence of a stipulation therefor in the policy, be entitled to be substituted to the rights of the mortgagee against the mortgagor." Pendleton v. Elliott, 1887, 67 Mich. 496, 35 N.W. 97.

Although this rule is stated with respect to a mortgagor-mortgagee relation situation, neither plaintiff nor defendant contends that the principles applicable to a vendor-purchaser situation are different. Certainly, there is ample authority for the proposition that the rules are the same for our purposes. See 26 C.J. 457, and the cases cited in footnote 9 thereof and in the corresponding annual annotations.

In the instant case, the policy was payable to the vendor and vendee as their interests may appear. The policy was purchased by the vendee and paid for by her. In fact, the contract for deed required such an arrangement. According to the general rule, therefore, defendant is not entitled to be subrogated to the plaintiff's rights as vendor unless the policy so permits. That is, the rules of subrogation as such, which draw their life from the equities of the situation, and not from the contract, Hayward v. State Farm Mutual Ins. Co., 1942, 212 Minn. 500, 4 N.W.2d 316, 140 A.L.R. 1236, do not permit defendant to be subrogated to plaintiff's interests as vendor. This result seems sound, for if the payment to the mortgagee, for instance, by the insurer extinguishes the mortgagee's claim against the mortgagor for the mortgage debt to the extent of the payment, then the mortgagee has no interest to which the insurer can be subrogated. Consequently, granting to the insurer the rights which the mortgagee or vendor no longer possesses would serve no purpose and would be more hypothetical than real. It is well settled that equity will not require the doing of a useless act. The only question, therefore, is whether the policy contains anything which entitled defendant to subrogation.

The policy does contain a union mortgage clause which provides for subrogation. This Court has held, however, that the union mortgage clause does not apply to the relationship of vendor and vendee under a contract for deed. In fact, the decision of Langhorne v. Capital Fire Ins. Co., supra, was predicated in part at least on the theory that the subrogation clause in the Minnesota statutory policy. Section 3512, Mason's Minn.Stat.1927, was inept to such relationship and negatived the statutory construction advanced by the plaintiff. On page 740 of that decision in 44 F.Supp., will be found the following:

"* * * Moreover, there are other statutory provisions to be read in connection with the union mortgage clause that strongly indicate that the Legislature meant just what it said when it used the term 'mortgagee' therein. For instance, after loss, upon payment to the mortgagee, he must assign and transfer, ' * * * the said mortgage, together with the note and debts thereby secured.' Section 3512, Mason's Minnesota Statutes 1927. Obviously, this language is not appropriate to a vendor in a contract for deed. If it is assumed to apply this statutory language to a vendor, one may pertinently inquire as to the type of an instrument which a vendor must execute and what are the obligations of an insurance company which succeeds to the covenants of a vendor in a contract for deed. The very absence of any apt statutory language pertaining to vendors in Section 3512 forcibly negatives the statutory interpretation which is now advanced by the plaintiff herein."

Defendant strongly urges, however, that even though the union mortgage clause is not applicable herein, the clause pertaining to subrogation should be adopted. But it must be clear that, under the facts of this case, the so-called subrogation clause, even if applicable, would not avail the defendant. This contract right to subrogation, as provided in this policy, is conditioned upon there being no liability under the policy to the mortgagor. In other words, there must be a finding that there is no liability on this policy to the vendee, Christine Peterson. Certainly, that fact has not been established in this case. The answers to the interrogatories unequivocally indicate the contrary. The mere fact that the statute of limitations may have run against Christine Peterson does not affect the liability of the defendant company. It merely goes to the remedy.

Defendant points out, however, in aid of its claim for subrogation, that the policy also provides as follows:

"And whenever the company shall pay any loss, the insured shall assign to it, to the extent of the amount so paid, all rights to recover satisfaction for the loss or damage from any person, town, or other corporation, excepting other insurers, or the insured, if requested, shall prosecute therefor at the charge and for the account of the company."

This paragraph clearly requires. the plaintiff to assign to defendant his rights against the wrongdoers who were responsible for the loss. But it seems equally clear that this provision does not require plaintiff to transfer to defendant his right to collect the debt which the vendee owed him. The wording clearly contemplates only claims against persons causing the loss.