GEORGE C. HAYWARD v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY
AND ANOTHER.
HOME INSURANCE COMPANY OF NEW YORK,
APPELLANT.[1]

May 29, 1942.

No. 33,077.

[1]Reported in 4 N. W. (2d) 316.

See 208 Minn. 191, 293 N. W. 246.
*Robins & Davis* and *James H. Levy,* for appellant.
*Frankberg & Berghuis,* for respondent.

LORING, JUSTICE.

In a suit for damages to his person and his Plymouth coach, George C. Hayward recovered a verdict of $7,401.93 against Ted Vollbrecht December 17, 1938. The judgment entered pursuant thereto on September 16, 1939, was affirmed upon appeal to this court. Hayward v. Vollbrecht, 208 Minn. 191, 293 N. W. 246. Prior to Hayward's suit against Vollbrecht, the Home Insurance Company of New York, appellant here, paid Hayward $550, representing the damage to his car under a policy of collision insurance carried by Hayward, and that company took a subrogation receipt and assignment from Hayward. It also took a bill of sale of the wrecked car, from which it realized $135.90.

After affirmance by this court, the State Farm Mutual Automobile Insurance Company, Vollbrecht's insurer, paid the judgment except for the $550 which the Home Insurance Company had claimed under its right of subrogation. Thereupon Hayward sued both companies for the $550. The Farm Mutual paid the money into court and was dismissed from the suit. The Home company set up its right to the $550 as subrogee, but on the trial deducted therefrom the $135.90 realized from the wrecked car and also its proportionate share of attorneys' fees. The court made

findings and conclusions in favor of Hayward. The Home company moved for amended findings and conclusions which would have resulted in its recovery of $279.52 out of the money deposited in court, or, in the alternative, for a new trial, upon the ground that the findings, conclusions, and order for judgment were not justified by the evidence and were contrary to law. The Home company has appealed from the order denying its motion.

The question presented is whether or not the Home company as subrogee can assert a right to the money paid into court.

1. As we view it, the trial court erred in assuming that damage to the car could be proved only by opinion evidence as to its value prior to and after the accident. That is not the only way in which such damage can be proved. That contention was made in Moore v. Daggett, 129 Me. 488, 489, 150 A. 538, where no such opinion evidence was introduced, but substantial physical damage was described to the jury. The court said:

"* * * we think that the jury had sufficient basis for an intelligent application of the established rule that the damages in this class of cases are the difference between the value of the car immediately before the collision and its value immediately after the collision. The description of the injuries presented to the jury a picture of the condition of the car after the collision quite as helpful in assessing the damages as the opinion of any expert automobile dealer."

In Teets v. Hahn, 104 N. J. L. 357, 359, 140 A. 427, 428, where it was contended that expert knowledge was required as a foundation for an opinion as to value, the court said:

"To give such testimony did not involve expert knowledge. Twelve men of ordinary intelligence sitting in a jury box, after hearing the testimony as to the cost of the car, its description, and use, and its condition immediately before and after the collision would be fairly enabled to arrive at the damage sustained, without the aid of expert testimony."

It is true that in both of those cases the original cost of the car was before the jury, but that element does not fix the value of a car just prior to a collision. It is an element which may be entirely disregarded by the jury. Its lack of importance is readily apparent to anyone who will take the trouble to observe the prices placarded upon used cars in used car lots. The cost price of a used car is never a controlling or even an influential factor in arriving at its value. Moreover, the approximate cost of new cars in the price class of a Plymouth is well known.

In the case at bar the car was struck with such violence that it was thrown at least 15 feet across a ditch. The impact was on the left side at the door, front fender, and running board, all of which were crushed. The cowl and instrument board were damaged. The gearshift lever was jammed in second speed, which indicated damage to the frame and gearbox. One witness testified that the pictures introduced showed the external damage clearly. In all probability, every juror who heard the case and saw the make and model of the damaged Plymouth coach, had an opinion as to its value prior to the collision. Having seen the character of the damage that had been done, as well as having heard a garageman describe in some detail the extent of the damage to the car inside and out, he could say very well how much less it was worth after the accident. At any rate, as said in the Moore case, the damage to the car was substantial and not merely nominal. It justified a recovery in some substantial amount.

In his complaint, plaintiff alleged the value of his car both before and after the collision and included that as an element of his cause of action. The answer admitted damage to the car but denied knowledge or information as to the amount. Plaintiff introduced the evidence referred to, and the trial court submitted the question of damages to the jury under proper instructions. It cannot be said that there was no recovery for this element of damage.

2. Hayward had but one indivisible cause of action against Vollbrecht, the wrongdoer. He subrogated a part of his cause to

the Home Insurance Company when he collected his collision insurance, and this was true whether or not he signed a subrogation receipt knowing what it was. Subrogation is "not dependent upon contract, privity, or strict surety." Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32, A. S. R. 566; Northern Trust Co. v. Consolidated Elev. Co. 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510.

3. The only means which the Home company had of recovery on its subrogated right was to have its claim included in plaintiff's cause of action against the wrongdoer. As against the wrongdoer, it could not be in any better position than the insured. By no act of either the insurer or the insured could the wrongdoer be subjected to two actions on one cause. The cause of action could not be split by the insurer any more than it could by the insured. If recovery had been had on either element of the cause, the other element would have been barred by the judgment. King v. C. M. & St. P. Ry. Co. 80 Minn. 83, 82 N. W. 1113, 50 L. R. A. 161, 81 A. S. R. 238; Sprague v. Adams, 139 Wash. 510, 247 P. 960, 47 A. L. R. 529. That has been the established law in this state for over 40 years. In the King case the plaintiff was denied recovery for property damage after having, in a separate suit, recovered for personal injuries arising out of the same negligent act. In the Sprague case the insurer was first in court as subrogee and recovered for damage to the car. The insured was later denied recovery for her personal injuries. Had the plaintiff here recovered from Vollbrecht on the damage to his car before he sought to collect on his collision insurance from the Home company, he could not have recovered the collision insurance. Bacich v. Homeland Ins. Co. 212 Minn. 375, 3 N. W. (2d) 665. One reason is that he would have thereby deprived the insurance company of its right of subrogation. Another is that he would thereby be getting double damages for the same loss. That is just what has happened here. There was substantial evidence of damage to the car before the jury, it was included in the pleading, and it was covered in the court's charge to the jury. Therefore, it is included in the verdict. True, there is no way of telling just what the jury

actually allowed plaintiff for damage to the car, but whatever there was would, under the doctrine of subrogation, be held in trust by plaintiff for the insurance company. The record shows that the Home company asked plaintiff's lawyers to look after its interests, but it received no reply. It is silent as to any notice given to the company of the approaching trial of the main action or of any request by plaintiff that it participate in the trial. The complaint showed definitely that recovery was sought for $650 damage to the car, which exceeded the amount to which the company was subrogated. The company was fully justified in believing that competent counsel would try the case according to the pleadings and that, since plaintiff had in his pleading assumed the obligation of recovering the damages upon which the law impressed a trust in favor of the company, he would offer competent proof and ask for a special finding if he desired one. As trustee, we conceive it to have been his duty to do so. For strategic reasons, plaintiff's counsel probably wanted no insurance company apparent on their side of the case. At any rate, plaintiff brought the suit the only way in which the total damage to the car could be recovered, that is, by including it in his action. The burden was then on him to protect the interest of his *cestui que trust*. If he desired assistance in protecting that interest he should have demanded it. As a trustee, if he wanted to know how much the jury would include in its verdict for damage to the car, he should have asked for a special finding. It was he who was to hold the recovery for such damage in trust for the insurance company. He, not his *cestui que trust*, had the management of the case. Not having asked for the finding, the only inference is that he was satisfied to take the amount he had received as a basis for computing what he would hold in trust for the company. No other rule would be just. In neither Hamilton F. Ins. Co. v. Greger, 246 N. Y. 162, 158 N. E. 60, 55 A. L. R. 921, nor Costello v. N. Y. C. & H. R. R. Co. 238 N. Y. 240, 144 N. E. 514, cited by respondent, was our view of splitting a cause taken nor was the trustee relation given consideration.

The company has credited plaintiff with the amount it received for the old car which was turned over to it and its proportionate amount of attorneys' fees, but it would be error to charge against the company the cost of expert witnesses to the personal injuries. That expense had no relation to the phase of the case relating to car damage.

The order appealed from is reversed with directions to change the conclusions of law and order for judgment in accordance with the views herein expressed.

Reversed.

HOLT, JUSTICE (dissenting).

I dissent. True, appellant procured from Hayward the subrogation assignment when it settled for the damage to his car under the terms of its policy. But when later Hayward sued Vollbrecht, whose negligence damaged the car and inflicted serious personal injuries on Hayward, Vollbrecht alone could defend on the ground that the former's cause of action had been split.

Subrogation rests on equity principles. Appellant claims $279.52 of the judgment Hayward obtained against Vollbrecht. The burden was upon it to prove that the judgment includes damages awarded for the car. The trial court's finding is that there was no evidence introduced to show the value of the car before the collision and its value thereafter. True, the court rightly charged that to be the measure of damages. But the finding is amply sustained that no witness was asked as to the value or market value of the car either before or after the collision. That the jury cannot award damages by their knowledge of automobile prices and looking at cars damaged in collision or a photograph of such cars is well settled by cases cited in 2 Dunnell, Dig. & Supp. § 3247; and the jury cannot award any sum for attorneys' fees unless there is evidence of value. Mitchell , v. Davies, 51 Minn. 168, 53 N. W. 363.

But it clearly appeared in this case that Hayward paid out for medical experts more than $500 which could not be taxed or be

included in the judgment. And, it seems to me, the rule is proper as stated in Flor v. Buck, 189 Minn. 131, 248 N. W. 743, 744, where the court said, "If he [the insured] makes recovery, he has the right first to reimburse himself for his loss and expenses, and then he holds the balance of his recovery in trust for the insurance company." Under the findings herein, well supported by the evidence, it seems to me it is inequitable to award any part of the money deposited with the clerk of court to appellant.

As supporting the decision of the trial court may be cited Shawnee F. Ins. Co. v. Cosgrove, 85 Kan. 296, 116 P. 819, 41 L.R.A.(N.S.) 719; Washtenaw Mut. F. Ins. Co. v. Budd, 208 Mich. 483; Costello v. N. Y. C. & H. R. R. Co. 238 N. Y. 240, 144 N. E. 514; Hamilton F. Ins. Co. v. Greger, 246 N. Y. 162, 158 N. E. 514.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the dissenting opinion of Mr. Justice Holt.