UNITED SERVICES AUTOMOBILE ASSOCIATION, A CORPORATION, APPELLANT AND CROSS-APPELLEE, V. LYLE Q. HILLS, APPELLEE AND CROSS-APPELLANT.

109 N. W. 2d 174

Filed April 28, 1961. No. 34860.

*Eisenstatt & Lay* and *John J. Higgins, Jr.,* for appellant.

*Thomas D. Carey* and *Lyle Q. Hills,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a declaratory judgment brought by the United Services Automobile Association against Lyle Q. Hills and Allstate Insurance Company. The trial court found for the defendant Hills and against United Services Automobile Association. The latter has appealed.

For convenience we shall refer to the plaintiff as United, to the defendant Lyle Q. Hills as Hills, and to Allstate Insurance Company as Allstate. The controlling facts are not in dispute, although there are variations in the evidence that do not appear material to the decision of the case.

Albert E. Dawson was the owner of an automobile which United had insured against loss caused by collision by a $50 deductible policy. On April 1, 1957, a loss occurred while the automobile was being operated by the wife of Dawson. United employed the Crocker Claims Service to adjust the claim. One Welch, an employee of Crocker, adjusted the claim and paid for Dawson on behalf of United the sum of $454.93, the

same being the amount of the damage less $50. In the proof of loss executed by Dawson the latter agreed with United that in case of recovery for the damage from a third person United would be subrogated, that Dawson would permit suit in his name by United, and that he would cooperate and give all reasonable assistance in the enforcement of its right of subrogation. There was no assignment of any part of Dawson's claim to United.

After the accident Dawson and his wife retained Hills, an attorney, to represent them in an action against one Yanovich, the driver, and one Miller, the owner of the other car involved in the accident. Hills investigated the facts preparatory to legal action. He interviewed Welch as to the results of his investigation, informed him of his intention to sue, inquired if United desired him to handle its subrogation claim, and informed Welch of his fee arrangement with Dawson. Welch advised Hills that he would inquire of United as to its wishes as he was without authority to act in the matter. Hills heard nothing further from Welch or United and commenced the action against Miller in June or July 1957. On December 5, 1957, Welch advised Hills by letter, at the instance of United, to delete the subrogation claim of United from his cause of action. Hills advised that the cause of action was Dawson's and could not be split, and proceeded with negotiations for settlement then pending. See Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 143 Neb. 404, 9 N. W. 2d 807; Dixon v. Coffey, 161 Neb. 487, 73 N. W. 2d 660; Hayward v. State Farm Mut. Automobile Ins. Co., 212 Minn. 500, 4 N. W. 2d 316, 140 A. L. R. 1236.

Allstate had issued a policy of insurance on Miller's automobile, insuring against public liability. After the action was commenced a settlement was negotiated between Allstate and Dawsons in the amount of $3,500. It is undisputed in this record that United had advised Allstate and Hills as attorney for the Dawsons of its right of subrogation and Allstate had informed United

that if and when a settlement was made with the Dawsons it would protect the subrogation rights of United.

When the $3,500 was ready for payment, Hills requested Allstate's attorney to issue two drafts, one for $454.93 payable to United and Hills and one for $3,045.07 payable to the Dawsons and Hills. This was done by agreement, as a matter of convenience, to permit the Dawsons to get their money promptly. Allstate, having notice of the amount of United's subrogation claim, protected it as agreed, by including United as a copayee with Hills on a draft for the amount of United's claim. Hills claims 33⅓ percent of the draft for $454.93 as an attorney's fee pursuant to fee arrangement with the Dawsons. The only issue before the court is the interest of Hills, if any, in the draft for $454.93.

We point out that ordinarily an insurance carrier such as Allstate would have adequately protected itself against the claims of others to the fund by issuing one draft for the full amount of the settlement and making all persons known to have an interest in the fund copayees therein. In the instant case the fund, by mutual agreement, was paid by two drafts by which the rights of all claimants were protected. The rights of the parties remain the same as if the whole amount were in one draft with all claimants listed as payees therein. When the present issue arose between United and Hills, this case was commenced by United against Hills and Allstate to have the rights of the parties determined. Allstate alleged that it had no interest in the litigation, asserted that it was in the position of a stakeholder, paid the $454.93 into court, and was dismissed from the case, in accordance with a stipulation of the parties.

A party may resort to a declaratory judgment proceeding whether it be an action in law or equity. In such a proceeding, where a question of fact is involved, such issue may be tried and determined in the same manner as issues of fact in other civil actions. § 25-21,157, R. R. S. 1943.

The present action is one of interpleader. Allstate as a defendant was authorized to interplead under the provisions of section 25-325, R. R. S. 1943. Farming Corp. v. Bridgeport Bank, 113 Neb. 323, 202 N. W. 911. It was dismissed from the litigation by stipulation of the parties. No irregularities are asserted or are available by virtue of the stipulation. The right to interplead and have the interests of the adverse parties determined in a fund held by a stakeholder is an equitable proceeding and will be so treated on this appeal. Provident Savings & Loan Assn. v. Booth, 138 Neb. 424, 293 N. W. 293.

It is the contention of United that Hills, standing in the shoes of the Dawsons to the extent of his claim, has no employment relation with United and cannot therefore recover from United. It cannot be questioned that Hills was not employed by United either expressly or impliedly. Ordinarily the right of a lawyer to compensation for his services depends upon a contract of employment, express or implied. But there are exceptions to this general rule. One exception is stated in a well-known text as follows: "An attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his compensation out of the whole fund, only where his services are rendered on behalf of, and are a benefit to, the common fund." 7 C. J. S., Attorney and Client, § 193 b (2), p. 1098. And it is stated in the same section "and the mere fact that some of the persons interested have employed counsel and opposed the suit which has benefited them, will not prevent their interests from being subjected to the payment of reasonable compensation to counsel who has succeeded in recovering or preserving the fund which is brought into the custody of the court." See, also, Blacker v. Kitchen Bros. Hotel Co., 133 Neb. 66, 273 N. W. 836; Gamboni v. County of Otoe, 159 Neb. 417, 67 N. W. 2d 489; Summerville v. North Platte Valley Weather Control Dist., 171 Neb. 695, 107 N. W. 2d 425. While the foregoing cases

do not sustain the claim of Hills, they do announce the underlying principle that does sustain it.

The applicable rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees. In the early case of Newcomb v. Cincinnati Ins. Co., 22 Ohio St. 382, 10 Am. R. 746, the rule was stated as follows: "Where the assured, as in case of partial insurance, sustains a loss, in excess of the reimbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. But if, by such action, there comes into his hands, any sum for which, in equity and good conscience, he ought to account to the underwriter, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. But the assured will not, in the forum of conscience, be required to account for more than the surplus, which may remain in his hands, after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery; unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution." See, also, Svea Assurance Co. v. Packham, 92 Md. 464, 48 A. 359, 52 L. R. A. 95; Washtenaw Mut. Fire Ins. Co. v. Budd, 208 Mich, 483, 175 N. W. 231; Shawnee Fire Ins. Co. v. Cosgrove, 85 Kan. 296, 116 P. 819, 41 L. R. A. N. S. 719; Camden Fire Ins. Co. v. Missouri, K. & T. Ry. Co. (Tex. Civ. App.), 175 S. W. 816; Annotation, 36 A. L. R. 1267.

In the last case above cited, the insurer, after having through its agents agreed to pay a loss caused by a fire covered by an insurance policy, reserving the right to be subrogated to the rights of the insured against third persons causing the loss, thereafter refused to pay the insurance. The insured commenced suit on the

policy, and later he instituted suit against the railroad causing the loss, recovering judgment in both cases. It was held that, inasmuch as the insurance company failed to make or offered to make, itself a party to the suit against the railroad company, or in any manner to assist in the prosecution, or contribute towards the expense thereof, although having full knowledge of its pendency and object, the insured would not be required to account for more than the surplus remaining in his hands after satisfying his loss in full and his reasonable expenses incurred in the recovery. The rule clearly applies to the instant case.

United contends, however, that the foregoing rule does not apply where the insured is informed that its subrogation claim is not to be included in the litigation and it indicates an intention to pursue the enforcement of its right of subrogation in some other manner. It seems clear to us, however, that whatever intentions United may have had prior to the commencement of the present action, they were abandoned when it elected to pursue its general equitable right of subrogation against the avails of the settlement established by the efforts of the Dawsons and Hills. In other words, when United abandoned its previous hostile position and elected to seek the collection of its claim from the avails of the litigation and settlement secured solely by the efforts of the Dawsons and Hills, it brought itself squarely within the cited authorities. Under such situation, justice and equity require that United pay its proportionate share of the expenses, including attorney's fees, incurred by the Dawsons and Hills in establishing the fund from which United seeks to benefit.

It is contended by Hills that he is entitled to the allowance of an attorney's fee against United in the district court and in this court under the provisions of section 25-1801, R. R. S. 1943. The trial court denied an attorney's fee in that court and Hills has cross-appealed, asserting that the trial court erred in so doing. We point

out that the claim of Hills for 33⅓ percent of the $454.93 paid into court was a claim against the fund for expenses and not a claim against United for an attorney's fee. It is not a claim against a person, partnership, association, or corporation within the purview of the statute. The trial court properly denied the allowance of an attorney's fee as a part of the costs. There is no merit in the cross-appeal. This court likewise denies an attorney's fee for services rendered in this court.

No question of pleading or parties is raised by this appeal. Under our system of code pleading, a pleading is required to contain a statement of the facts in ordinary and concise language. §§ 25-804 and 25-811, R. R. S. 1943. It is the facts well pleaded that determine the nature of the action and the relief to be granted. The rule has been stated by this court as follows: "It is a long-established rule that a court of equity which has obtained jurisdiction for any purpose will retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject-matter." Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298. The pleaded facts and evidence sustain the prayer of Hills' cross-petition. The district court so found. The judgment rendered is correct and it is affirmed.

AFFIRMED.

WENKE, J., not participating.

SIMMONS, C. J., dissenting.

Like the chameleon changes its color, so the court's opinion shifts from position to position and finally concludes with an affirmance of the trial court's judgment.

It cannot conceal, however, the ultimate fact that it here compels the payment of a contingent fee to a lawyer by an insurance company who never employed him and specifically directed him not to represent it in a court action.

I have been of the opinion that an appellate court should pay attention to the pleadings in a cause, the

positions of the parties, the issues presented, and the evidence received bearing on those issues.

I shall here refer to the plaintiff as United; to Allstate Insurance Company as Allstate; to Lyle Q. Hills as Hills; to Major Dawson as Dawson; to Mrs. Dawson as such; and on occasion to the Dawsons as such.

An outline of the court's opinion follows this reasoning:

It first declares this to be an action for a declaratory judgment. I agree.

The court then states certain facts which I am unable to find either in the pleadings or the evidence. I will refer to some of these in this dissent in later paragraphs.

The court then seems to approve Hills' contention that Dawson was required to sue for United's subrogated claim but says only that that was Hills' contention. I discuss the splitting of causes of action later herein.

The court states that the only issue before the court was the interest, if any, of Hills in the draft for $454.93. The court finally proceeds to rest Hills' right of recovery upon the stated right of *Dawson to recover expenses* in spite of the total absence of any evidence that Hills or Dawson had any expense and that the Dawsons are not parties to this litigation.

The court then holds that this "action is one of interpleader" although no one interpleaded and the parties stipulated that only United (the plaintiff) and Hills (the defendant) are interested in the fund. Allstate was and is a party in this action. Dawson did not interplead nor was he interpleaded and is in nowise a party to this proceeding.

The court then, without any evidence before it of the parties' pleadings or issues in the action against the tortfeasor, proceeds to hold that in that action there was the preservation and recovery of a common fund.

That action so far as this record shows was a two-cause action at law. One by Mrs. Dawson to recover for personal injuries and the second cause one by as-

signment to recover property damage. So far as the pleadings and evidence go it was an ordinary, garden variety of an action at law for damages. Obviously the Dawsons were interested in that "common fund." Hills, as an attorney, may have been and obviously was interested in getting an attorney's fee out of the "common fund." However, that "common fund," if it is such, belonged to the Dawsons and United, not to Hills. The Dawsons are not parties to this proceeding and by stipulation of the parties, not including the Dawsons, the Dawsons have no interest in the fund involved in this action.

The court then holds that United, by accepting the avails of the litigation against the tort-feasor, is subject to a proportionate share of the expenses, including attorney's fees. However that is a right of the Dawsons, not of Hills. The Dawsons are not parties to this action and are not here making any claim for the recovery of expenses. In fact there is no evidence that the Dawsons incurred any expense, nor is there evidence that Hills incurred any expense in connection with the recovery of this fund. The fact that the Dawsons, under that theory, are necessary parties and are entitled under the rule announced to recover a "proportionate share of the expenses thereof, including attorney's fees" does not seem to give the court concern. The court does not rest its decision on that point however. It concludes with a finding that the pleaded facts and the evidence sustain the prayer of Hills' cross-petition. I recite the prayer of Hills' cross-petition which the court says should be sustained: "Wherefore, defendant, Lyle Q. Hills, prays that the petition of the plaintiff be dismissed; that he be given a judgment for $151.64 against the plaintiff on his cross-petition, together with his costs herein expended and a reasonable attorney fee."

I include the concluding allegations of that cross-petition: "That due demand was made more then (sic) 90 days prior hereto upon the plaintiff herein for $151.64

for services rendered and no part has been paid." The court then approves the recovery "for services rendered" to United by Hills but denies him an attorney's fee on his recovery as not "within the purview" of section 25-1801, R. R. S. 1943. By the statute the first basis for the granting of such a fee is "for services rendered." I submit that if Hills is entitled to recover "for services rendered" he is entitled to an attorney's fee by the direct language of the act. But without explanation that is denied as "without merit." I submit that the entire claim of Hills should be denied as "without merit."

It appears that sometime prior to April 1, 1957, plaintiff issued a "physical property damage" insurance policy to Dawson for a Pontiac automobile. This was a "$50.00 Deductible" policy. The record does not contain the terms of the policy.

On April 1, 1957, Mrs. Dawson was involved in an accident resulting in serious personal injuries and damage to the insured car.

Allstate was the insurance carrier for the owner of the other car involved.

United employed an adjuster in Omaha and apparently reached the conclusion that it was liable to Dawson for $454.93. It paid that amount to an agency which repaired the automobile. Apparently Dawson signed a subrogation agreement with United but it does not appear in the evidence. United then advised Allstate of the payment and demanded the sum paid. Allstate replied, asking for estimates of damage and insured's version of the accident. Allstate promised that if and when it settled the personal injury claim of Mrs. Dawson it would protect United.

In May 1957 Mrs. Dawson consulted Hills and apparently employed him to represent her against the tortfeasor for whom Allstate was the insurance carrier.

In May or June 1957 Hills talked to the adjuster, advised him of the additional damage to the Dawson car, and asked what investigation the adjuster had made.

There was also some talk in July 1957 about the necessity of suit, Hills asked if United desired him to represent it, and Hills advised the adjuster what his fee would be if he collected United's claim without litigation and if he represented United in litigation. The adjuster agreed to take it up with United.

In June or July 1957 suit was filed by Mrs. Dawson on her cause of action based on her personal injuries and later on a second cause of action, it being the assigned property damage claim. The pleadings in that action are not here, nor does the record contain a statement of the amounts claimed on each cause of action.

In July 1957 Hills was asked by the adjuster if he had included the full amount of property damage in the suit. He replied that he had, because he could not "split a cause of action." Hills was advised that he had no authority to represent United. On December 5, 1957, Hills was requested by letter to delete United's subrogation right from the cause of action. Hills replied orally, refusing to do so for the above reason. This apparently was concurrently done with an offer by Allstate to settle for $1,200. Hills recommended the settlement but his client refused to accept it. It is the first indication that United knew that Hills had filed suit for the full amount of the property damage.

The matter then proceeded to settlement in June 1958. Allstate issued its draft to the Dawsons and Hills for $3,045.07, which included the $50 "deductible" assigned to Mrs. Dawson by Mr. Dawson. That payment is not involved in this litigation.

Allstate, also, in keeping with its promise to United, issued a draft payable to United in the sum of $454.93. At Hills' request his name was inserted in the draft as copayee. Hills received the draft, mailed it to United, and requested that United endorse it and return it to him. Hills then proposed to deduct a fee of one-third of the amount and send his check for the balance to United. United refused, and this litigation followed.

It was later stipulated that Allstate should pay the fund involved to the clerk of the court and upon doing so should be dismissed as a party defendant. There is no record of the money being paid into court or an unconditional order of dismissal entered. Allstate continues as an ignored party in this litigation.

What are the issues as presented to the trial court?

United alleged that it brought the action for a declaratory judgment to determine an actual controversy between the parties.

United alleged the issuance of its policy covering physical property damage and the employment of Hills by Dawson to represent "his interests for the personal injuries sustained by him." United alleged the damage to a 1955 Pontiac station wagon and that it had paid $454.93 toward the repair of the automobile; and that it was subrogated to the interests of its insured.

United alleged that it had notified both Allstate and Hills that it did not want its subrogation claim represented by Hills. It then alleged that notwithstanding such notice, Hills negotiated a settlement with Allstate and had his name inserted in the draft as a payee along with United for the $454.93. United further alleged that Hills demanded United sign the draft and return it to him so that he could collect the full amount, deduct one-third thereof as a fee, and pay the balance to United.

United then prayed for a judgment that Hills was not entitled to any part of the sum of $454.93.

Hills by answer admitted that the action was one for a declaratory judgment and admitted the corporate capacity of United and Allstate, and that he was a "practicing attorney." He then denied generally except as to matters admitted in his cross-petition. He there admitted the issuance of United's policy and the collision, and alleged that he was employed by Dawson to represent him in his claim for damages to his automobile. He then alleged that he started settlement negotiations

in June of 1957 and filed suit on September 12, 1957; that thereafter settlement was made by Allstate for the tort-feasor; and that the draft was issued in the amount of $454.93 payable to himself and United. He then alleged that he had demanded payment of $151.64 by United "for services rendered."

Hills prayed for a dismissal of the petition for a declaratory judgment; and that he have judgment for $151.64 against United on his cross-petition, together with his costs and an attorney's fee under the statute. § 25-1801, R. R. S. 1943.

Hills during the progress of this case made a request for admissions which included a request that United admit that Hills had made demand for the fee of $151.64 "for services rendered."

Thus Hills framed the issues as an action at law. What was Hills' position at the trial? He testified when asked if he was ever hired by United: "There is no question but what they attempted to take the fruits of my efforts; and after they knew I was going ahead, they said nothing until I was ready to start the case in 1957." He also testified: "I also insisted that they make it for the full amount of the deal so there could be no criticism that I compromised their name (claim) without their authority, in view of the letter I got about deleting that portion of the claim."

What is Hills' position here? He states in his brief: "We respectfully submit that all the facts and circumstances show that in this case the plaintiff appellant desired the fruits of the work of the attorney and the work was not done gratuitously and that in equity and good conscience it should be required to pay the attorney fee which was the minimum attorney fee allowed for this service in this jurisdiction. * * * Justice and equity could not hold that this insurer is in a preferred classification so that its claims can be collected without payment of attorney fees * * *."

Hills claims no contract, express or implied. He pleads only that United took the fruits of his services.

Hills then brings himself squarely within the case of In re Estate of Kierstead, 121 Neb. 423, 237 N. W. 299. We there dealt with the claim of lawyers for the value of services inuring to the benefit of parties who refused employment to the claiming lawyers.

We there held: " 'No one can legally claim compensation for voluntary services to another, however beneficial they may be, especially where rendered without his knowledge or consent, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed.' (This language was quoted by us from 6 C. J. 730. See, also, 7 C. J. S., Attorney and Client, § 175, p. 1041.) * * *

"The evidence fairly discloses that the interveners herein exerted diligence in their efforts to secure a termination of the controversy and that it inured to the substantial benefit of all the heirs. But we are unable to find that the interveners obtained an implied or express contract of employment with the defendants. It clearly appears that the interveners were notified that the defendants had employed another as their attorney and that there was no justification for the interveners to assume that they represented the defendants.

"In view of the evidence and the law applicable thereto, we conclude that, where the interveners were expressly employed by other of the heirs to represent their interests, and a settlement was subsequently reached which inured to the substantial benefit of all interested parties, the defendants are not liable for the payment of attorneys' fees, in the absence of an express or implied contract of employment with the interveners."

The court holds: "It cannot be questioned that Hills was not employed by United either expressly or impliedly." With that finding I agree. It is my position that under that finding our holding in In re Estate of

Kierstead, *supra,* becomes directly controlling and requires a denial of recovery to Hills. But the court awards Hills the fee he seeks in an action "for services rendered."

In 5 Am. Jur., Attorneys at Law, § 155, p. 352, the rule is stated as follows: "The mere fact that the services which an attorney renders his client are beneficial to a third person, * * * does not entitle the attorney to recover compensation from the person or persons thus benefited."

There are other findings, statements, and stated rules of law with which I disagree or think are inapplicable.

I shall take these up as they appear in the opinion.

In the third full paragraph of the opinion the court refers to a proof of loss executed by Dawson and sets out its terms. I do not find where such a proof of loss was ever offered in evidence. It was not before the trial court as evidence and is not here. There is in the transcript a proof of loss signed by Dawson. It appears there as a part of a showing made by United in his effort to secure a summary judgment. It was never offered in evidence at the trial of this cause and would not have been competent had it been offered, for the simple reason that it relates to a 1955 Mercury, and the damage here involved and settled for refers throughout to a 1955 Pontiac.

The court then holds that: "There was no assignment of any part of Dawson's claim to United." There is no basis in this record for that statement; as to it the record is silent.

Discussing the relationship of Hills to the Dawsons in this matter, the court states that Hills interviewed Welch, the adjuster for United, "informed him of his intention to sue," and "inquired if United desired him to handle its subrogation claim, and informed Welch of his fee arrangement with Dawson." This record is entirely devoid of any evidence as to the fee arrangement made between Hills and the Dawsons. Hills was

advised that Welch had no "authority to act in the matter" as the court holds.

The court then holds that United advised Allstate "and Hills as attorney for the Dawsons" of its right of subrogation. There is evidence in the record that Allstate was so advised and agreed to protect United. I find no evidence that the Dawsons were so advised.

The court then states that Allstate asserted that "it was in the position of a stakeholder, paid the $454.93 into court, and was dismissed from the case, in accordance with a stipulation of the parties." The record is that Allstate answered, admitted four of the five paragraphs of United's petition, alleged that the controversy was between United and Hills, and denied each and every other allegation in United's petition.

Allstate appeared by its attorney at the trial of this cause on December 3, 1959, stated that it was not the real party in interest, and asked to be excused. The court excused the attorney. Later on May 5, 1960, a stipulation was filed by United, Allstate, and Hills that Allstate "should be dismissed * * * upon depositing with the Clerk · * * * the sum of $454.93 * * *." After judgment pursuant to the stipulation the trial court ordered Allstate dismissed upon payment to the clerk of the sum of $454.93. There is no showing that the money was ever paid into court nor that the order of dismissal became effective. On this record Allstate remains a party to this action. Just who holds the draft does not appear.

The above finding of the court seems to be resorted to in order to lay a foundation for holding this to be an action in equity. Allstate was named defendant, it joined issue with United on material allegations, it did not pay the money into court, and remains in possession of the fund involved, so far as this record shows.

The court then, having by that process converted an action "for services rendered" into an equitable action of interpleader, proceeds to hold that this is a representa-

tive action to recover a common fund and hence avoid the rule of In re Estate of Kierstead, *supra*.

The claim of this sum of $454.93 being the result of a representative action appears for the first time in this opinion of the court. The sum in dispute is the result of a settlement of a property damage cause of action. That is an action at law. Hills does not assert now and never has asserted that he had any authority to represent United. He did not bring the damage action against the tort-feasor for United but for the Dawsons. Nowhere in the pleadings is any contention that this or the preceding law action was a representative action. In fact in the stipulation of May 5, 1960, all three parties stipulate that the dispute is between Hills and United "and between them only." The sole issue presented here and in the court below is this: Was Hills entitled to a judgment against United for attorney's fees for services rendered payable out of the sum which Allstate agreed to pay United? He makes no other claim. The court to sustain this representative action theory then cites three cases which it says "do not sustain the claim of Hills" but "do announce the underlying principle that does sustain it."

I find difficulty in going in two directions at the same time.

The record here shows that Mrs. Dawson sued the tort-feasor on two causes of action. One was her own action for personal injuries. The second cause was on the assigned claim of Dawson for property damage.

I confess difficulty in finding that an action at law for property damage suddenly becomes a representative class action in equity merely because a part of the damage claim by subrogation may belong to the insurer of the injured party. I need not explore that question here because this much is certain: No part of the cause of action belonged to Hills. Hills' only conceivable interest in it was under an attorney's contract with Dawson. That contract, if any, does not

appear in this record. Hills claims no part of the fund as such. He merely has put himself in position to compel United to pay him a contingent fee.

Before going further in the discussion of the opinion, I desire to return to the basis of Hills' contention that he was justified in including United's claim in the Dawsons' action and later in refusing to delete it when he had direct instructions to do so. It was that the cause of action "could not be split." The court does not say that it sustains that position, but in fact does so. It cites Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 143 Neb. 404, 9 N. W. 2d 807; Dixon v. Coffey, 161 Neb. 487, 73 N. W. 2d 660; and Hayward v. State Farm Mut. Automobile Ins. Co., 212 Minn. 500, 4 N. W. 2d 316, 140 A. L. R. 1236.

What is the holding of these cases? In the Shiman case the question was: Who was the real party in interest? Shiman there had its own cause of action. An insurance company had loaned it the amount of its liability to Shiman. During the course of the opinion we quoted from 29 Am. Jur., Insurance, § 1358, p. 1016. That quote is now found in 29A Am. Jur., Insurance, § 1746, p. 821. It is followed by this sentence which we did not quote in Shiman and which the court does not now quote: "This rule has been said to rest upon the theory that the insured sustains toward the insurer the relation of trustee, and also upon the right of the wrongdoer not to have the cause of action against him split up so that he is compelled to defend two actions for the same wrong."

The quote from the Shiman case is stated in Dixon v. Coffey, *supra,* as the probable source of the trial court's error in a preliminary ruling. It is not approved there.

In Hayward v. State Farm Mut. Automobile Ins. Co., *supra,* attorney's fees were not involved. There the subrogee insurance company apparently approved the inclusion of their claim in the suit by the injured party.

The subrogee asked the injured party to represent it in the action. No question of attorney's fees was involved. The issue related to the right of the subrogor to deduct expert medical witness fees from the recovery for property damage. The decision rests on a holding that the tort-feasor could not be "subjected to two actions on one cause." The court held that had that split cause been sued on and "recovery had been had on either element of the cause, the other element would have been barred by the judgment."

However, the splitting of a cause of action by an injured party is not barred by the rule. If a split cause is brought and goes to judgment, the remaining "element" of the cause is then barred if suit is brought on a part of a cause. So here if the Dawsons had sued for the $50 damage not paid by United they would have had a perfect right to recover that $50 and Allstate and its insured could have pleaded that suit as barred by the judgment if they later were sued thereon.

As I read the Hayward v. State Farm Mut. Automobile Ins. Co. case, it is an authority directly contrary to the position taken by Hills in contending that he was required to sue for the entire property damage. Obviously he was not. Our cases do not so hold.

United had been subrogated to the rights of Dawson against the tort-feasor. Allstate was the insurance carrier for the tort-feasor. United advised Allstate of its payment to Dawson and asked for payment. Allstate promised to pay United on a condition later met. At that point Dawson had split his cause of action against the tort-feasor and accepted United's payment of its contractual obligation to him. United became the creditor of Allstate. Allstate was not required to assent to the splitting of the cause of action between United and Dawson. It did so. So we have a situation where a debtor consents to the splitting of a cause of action and agrees to pay part thereof to one creditor and part thereof to another creditor.

The rules are stated as follows: "The object of the rule against splitting causes of action is to prevent multiplicity of actions, a course favored by the law, and to avoid the costs and expenses incident to vexatious litigation on the same cause of action, and is for the benefit of defendant. * * * As a defense it is not an estoppel, but a bar. * * * *The rule does not prevent plaintiff from suing for a part of a single cause of action;* it applies only where the claims or demands are divided and made the basis of several actions; and if he does sue for a part, it merely precludes him from thereafter maintaining another action for the other portion. * * * *Since the rule prohibiting the splitting of causes of actions is for the benefit of defendant, he alone is entitled to object if the rule is not enforced;* he may waive or renounce its benefits by either expressly or impliedly consenting to the institution of separate actions on a single demand or cause of action, and such a waiver will be presumed unless timely and proper objection is made." 1 C. J. S., Actions, § 102, pp. 1308, 1309, 1310, 1312. (Emphasis supplied.)

"* * * one who has a claim against another may take a part in the satisfaction of the whole, *or maintain an action for a part only, of the claim,* * * *. But after having brought suit for a part of a claim, the plaintiff is barred from bringing another suit for another part. The law does not permit the owner of a single or entire cause of action or an entire or indivisible demand, *without the consent of the person against whom the cause or demand exists,* to divide or split that cause or demand so as to make it the subject of several actions. The whole cause must be determined in one action. *If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action* for the residue of the claim, notwithstanding the second form of action is not identical with the first, or different grounds for relief are set forth in the second suit. This principle not only em-

braces what was actually determined, but also extends to every other matter which the parties might' have litigated in the case. The rule is founded upon the plainest and most substantial justice,—namely, that litigation should have an end and that no person should be unnecessarily harrassed with a multiplicity of suits." (Emphasis supplied.) 1 Am. Jur., Actions, § 96, p. 480.

"The rule against splitting applies to bar the second action * * *." 1 Am. Jur., Actions, § 98, p. 483.

"The rule that a cause of action may not be split into two or more causes of action is a rule for the benefit of the party defendant; he may agree to a splitting of the cause of action, and in such case the courts will respect the agreement, or he may waive his right to insist upon the rule forbidding the splitting of a single cause of action." 1 Am. Jur., Actions, § 101, p. 484.

There is no multiplicity of suits involved in the first action on a split cause. That comes on the second and subsequent actions.

The debtor is the one who has the right, if he wishes, to raise that question when sued the second or subsequent time on a cause of action. The creditor cannot raise it for the debtor as Hills undertook to do here. As pointed out, the debtor in this instance has specifically agreed to pay the part of the cause to which United is entitled by subrogation. The question of Allstate's liability is not involved here. I suggest, also, a reading of 1 Am. Jur., Actions, § 102, p. 485.

Hills concedes that he was not employed by United; that he was advised that United did not desire his representation; and that United asked him to omit its subrogated part of the cause from the suit. The rules regarding the splitting of causes of action neither required the Dawsons to sue for the full amount of their loss, nor do they justify the payment of an attorney's fee for service to a person who did not employ him.

Having apparently accepted Hills' "split cause of action" theory that he was compelled to represent United

even though not so employed, the court then would avoid the rule of In re Estate of Kierstead, *supra,* by an exception to the rule, and holds as follows: "* * * where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees."

I shall not extend this dissent by a discussion of the cases cited there. They relate to the right of an insurer who has paid part or all of a loss to recover from the insured who has recovered from the tort-feasor. The question at issue in these cases was not (as here) the right of an attorney for the insured to collect a fee from the insurer. Rather it was the right of the insured, to whom the payment had been made, to deduct payments made by him to his attorney as expense.

Every case cited by the court on this proposition involves actions by an insurer who has paid its contract liability to an insured and who later sues the insured to recover money paid to the insured. They are insurer-versus-insured actions. There is no dispute presently among us about that rule. This is not an insurer-versus-insured action. Most of the cases are cited in 29A Am. Jur., Insurance, §§ 1736, 1737, 1738, 1739, and 1740, p. 812, and following. See, also, 46 C. J. S., Insurance, § 1209, p. 155. Dawson is not here making any claim to the money involved in this action. Hills claims it for himself and not for Dawson. In fact, I repeat, the Dawsons are not even parties to this declaratory judgment proceeding. No one knows what the position of the Dawsons might be were they parties. Interestingly enough two of the cases cited by the court to sustain its position at this point are cited in the dissenting opinion in Hayward v. State Farm Mut. Automobile Ins. Co., *supra,* which is a case relied on by the court earlier in the opinion.

If this action is to be determined on the theory pres-

ently being discussed, I point out that section 25-21,159, R. R. S. 1943, requires that all persons shall be made parties in a declaratory judgment action who have or claim any interest which would be affected by the declaration. Under our decisions in Redick v. Peony Park, 151 Neb. 442, 37 N. W. 2d 801, and Stahl v. Allchin, 155 Neb. 412, 52 N. W. 2d 251, this action should be dismissed if the rule of law just above discussed is to be considered as controlling.

Early in the opinion the court says: "Hills claims 33⅓ percent of the draft for $454.93 *as an attorney's fee* pursuant to fee arrangement with the Dawsons." (Emphasis supplied.) Hills did so make his claim for an attorney's fee. I challenge the court to point out where by pleading or proof there is any evidence of the "fee arrangement" made by Hills with the Dawsons. I have searched the record and it is not there.

The court then holds that United seeks to recover against the "avails of the settlement established by the efforts of the Dawsons and Hills." It goes further and says that the avails of the settlement were "secured *solely* by the efforts of the Dawsons and Hills." (Emphasis supplied.)

The record is (by Hills' testimony) that Hills went to the adjuster for United and sought and secured the information and investigation facts that the adjuster had assembled. He then testified as to his own investigation. It is manifest from his investigation that he was seeking evidence to assist recovery in the personal injury claim of Mrs. Dawson. At that time there had been paid for Dawson all but $50 of his property damage. There is no evidence that the Dawsons expended any effort in securing the settlement here, except to resist Hills' efforts to persuade them to accept a settlement for $1,200.

Having started off with the position stated in the sixth paragraph of its opinion that Hills claimed one-third of the fund here involved as an "attorney's fee pursuant to fee arrangement with the Dawsons" the

court concludes by awarding it to Hills as reasonable "expenses." Manifestly under the authorities cited by the court if any one was entitled to recover "expenses" it was the Dawsons. Here again I appeal to the record. There is not a wee bit of a scintilla of evidence that Hills or Dawson spent one copper cent of 1957 value in order to secure a settlement of the claim for property damage. The issue was at all times the amount that Allstate would be required to pay for the tort-feasor to settle the claim of Mrs. Dawson. Likewise there is no evidence that the Dawsons ever paid Hills or incurred a liability to Hills for attorney's fees in any part of this matter.

Why, then, this shift from the earlier position that Hills sought an attorney's fee to a judgment for Hills for "expenses." To bring the case within the last discussed rule is obviously one reason. However in doing so the court gets itself into another dilemma. Section 25-1801, R. R. S. 1943, provides for the recovery of an attorney's fee under certain instances "for services rendered." Hills sought in his cross-petition to recover an attorney's fee "for services rendered." Hills rendered no services for United. He here seeks to recover from United "for services rendered" to the Dawsons. The court orders United to pay it as a part of the Dawsons' expenses. If Hills is entitled to recover the one-third attorney's fee, then he is entitled to recover another fee under the statute above cited.

The court says the pleaded facts and evidence sustain the prayer of Hills' cross-petition. It then proceeds to deny a part of that prayer.

One further matter requires comment. Hills offered no evidence of a contractual relationship either with the Dawsons or United. He offered no evidence as to the reasonable value, if any, of his services. He sought to recover and is permitted to recover a fee in accord with the fee schedule of the Omaha Bar Association. The

trial court by its decision took judicial notice that such a fee schedule is reasonable. This court affirms.

It is not for me to discuss the impact of this decision on the insurance business of this state. That it will be disturbing and controversy-producing is to state it mildly. It likewise will be a source of confusion to the trial courts and lawyers in causes of this character. Those considerations and not the amount in controversy justify this dissent.

I am authorized to say that Boslaugh, J., concurs in this dissent.