Kenneth LANGENBERGER, as father and natural guardian of Daniel Langenberger, a minor, et al., Respondents,

v.

Vickie M. DAHL, as Administratrix of the Estate of Patricia Louise Austin, deceased, et al., Respondents,

Charles Arthur Griep, et al., Respondents,

and

State Farm Mutual Automobile Insurance Company, Appellant.

No. 82–598.

Supreme Court of Minnesota.

Jan. 28, 1983.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and Charles E. Spevacek, Minneapolis, for appellant.

Rider, Bennett, Egan & Arundel, Richard Nygaard and Eric Magnuson, Minneapolis, for Langenberger, et al.

Lasley, Gaughan, Stich & Angell and Michael Kreidler, Minneapolis, for Dahl, et al.

Lommen, Nelson, Sullivan & Cole and Mark Stageberg, Minneapolis, for Griep, et al.

SCOTT, Justice.

This case is an appeal from an order of the Hennepin County District Court granting respondents' motions for summary judgment. The ruling dismissed appellant's complaint in intervention by which appellant sought reimbursement via indemnification and/or subrogation for basic economic loss benefits paid pursuant to the Minnesota No-Fault Automobile Insurance Act.

The facts of this case are not in dispute. On February 11, 1976, plaintiff Daniel Langenberger was a passenger in an automobile owned by defendant Eugene Austin and operated by defendant Vickie M. Dahl's decedent, Patricia Louise Austin. A collision occurred between the vehicle in which Daniel Langenberger was riding and a tractor-trailer unit owned by defendant Hyman Freightways, Inc., and operated by its employee, defendant Charles A. Griep. As a result of this accident, Daniel Langenberger suffered severe and permanent injuries.

State Farm Mutual Automobile Insurance Company (State Farm), as insurer for Kenneth Langenberger, Daniel Langenberger's father, paid $70,000 in basic economic loss benefits pursuant to the Minnesota No-Fault Automobile Insurance Act.

Suit was commenced by plaintiffs Daniel and Kenneth Langenberger against defendants Austin, Griep, and Hyman Freight-

ways, Inc. Prior to trial, the attorneys for plaintiffs and defendants were notified that State Farm intended to seek reimbursement from defendants' insurers for the $70,000 of no-fault benefits that State Farm had provided Daniel Langenberger.

On April 4, 1981, the jury returned a verdict in favor of Daniel Langenberger for $950,000.00 in damages and Kenneth Langenberger for $197,589.28 in medical expenses. The jury apportioned 92.5% of the total liability to Patricia Louise Austin by her administratrix, Vickie M. Dahl, and 7.5% of the total liability to Hyman Freightways, Inc., and Charles A. Griep. No fault was apportioned to the plaintiffs. No set-off for no-fault benefits paid pursuant to Minn.Stat. § 65B.51, subd. 1 (1974) was requested or made from the award.

After return of the jury's verdict, State Farm brought a motion to intervene, seeking reimbursement for no-fault benefits paid to or on behalf of Daniel Langenberger as a result of the February 11, 1976, accident. The motion was granted by the trial judge. Plaintiffs recognized full and complete satisfaction of the judgments entered on their behalf. Cross-motions for summary judgment were made. Judgment was entered in favor of the plaintiffs and defendants against State Farm. This appeal followed.

The issues presented are:

(1) Whether the trial court erred in ruling that appellant was not subrogated to the rights of respondents Daniel and Kenneth Langenberger against the negligent tortfeasors.

(2) Whether the trial court erred in ruling that appellant was precluded from asserting its right to indemnification against the reparation obligor of Hyman Freightways, Inc., and Charles A. Griep.

1. The purpose of the Minnesota No-Fault Automobile Insurance Act is explained in Minn.Stat. § 65B.42 (1982). Three of the major purposes of the Act are (1) "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident," Minn.Stat. § 65B.42(1); (2) "[t]o encourage appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment," Minn.Stat. § 65B.42(3); and (3) "to provide offsets to avoid duplicate recovery," Minn.Stat. § 65B.42(5).

In order to encourage prompt payment for medical treatment and avoid duplicate recovery, the legislature, in the original Act, provided insurers with rights of indemnification, Minn.Stat. § 65B.53, subd. 1 (1974),[1] and subrogation, Minn.Stat. § 65B.53, subd. 2 (1974).[2] In addition, Minn.Stat. § 65B.51, subd. 1 (1974),[3] re-

---

1. Minn.Stat. § 65B.53, subd. 1 (1974), provides:

A reparation obligor paying or obligated to pay basic or optional economic loss benefits shall be entitled to indemnity subject to the limits of the applicable residual liability coverage from a reparation obligor providing such coverage to a person whose negligence was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable to the extent that the insured would have been liable for damages but for the deduction provisions of section 65B.51, subdivision 1, and only if a commercial vehicle was involved in the accident causing the injury.

2. Minn.Stat. § 65B.53, subd. 2 (1974), provides:

To the extent permitted by section 65B.51, subdivision 1, a reparation obligor paying or obligated to pay basic or optional economic loss benefits shall be subrogated to the extent of benefits paid or payable to any cause of action to recover damages for economic loss which the person to whom the basic or optional economic loss benefits were paid or payable has brought under the terms of section 65B.51, subdivision 3 against another person whose negligence was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable.

3. Minn.Stat. § 65B.51, subd. 1 (1974), provides:

With respect to a cause of action in negligence accruing as a result of injury arising

quired that the value of basic economic loss benefits paid by a no-fault insurer be deducted from an insured's recovery from a negligent third party under certain circumstances.

In the instant case State Farm paid the policy limits of $70,000 in basic economic loss benefits to its insured, Kenneth Langenberger, for medical expenses incurred by his son, Daniel, as a result of the February 11, 1976, accident. Kenneth Langenberger subsequently recovered $197,589.28 for his damages from third-party tortfeasors and Daniel Langenberger recovered $950,000.00. State Farm intervened seeking reimbursement by indemnification and/or subrogation for the basic economic loss payments made to Kenneth Langenberger. The trial court held that State Farm had no right of subrogation because where the right to indemnification was available it was the *exclusive* remedy, subrogation being available only where indemnification is not. The trial court further held that State Farm had, in effect, waived its indemnification right because the reparation obligor for defendant Vickie M. Dahl had paid the full limits of its residual liability coverage and the reparation obligor of defendants Hyman Freightways and Charles Griep had satisfied the judgment against them, thus relieving them of all liability toward the plaintiffs. The trial court held that plaintiffs' damages included the elements for which State Farm was seeking reimbursement and that it would be unfair to make the reparation obligor now pay the same damages a second time.

The trial court's determination, that subrogation is only available to a reparation obligor where indemnification is not, is incorrect. There is no indication in the language of Minn.Stat. § 65B.53, subd. 1 or subd. 2, that either operates to the exclusion of the other. In a report to the 1973 session of the Minnesota Legislature, the Automobile Liability Study Commission stated:

> We recommend that the first party insurer retain the right of subrogation to the extent of benefits paid and that insurers be encouraged to settle their subrogation claim through inter-company arbitration procedures. The insurer should also have the option to demand reimbursement from the proceeds of the injured person's lawsuit against the tortfeasor if no intercompany adjustment of the claim has taken place prior to the lawsuit.

Minnesota Automobile Liability Study Commission, Report to the 1973 Legislature, p. 22. The No-Fault Act adopted by the 1974 legislature appears to have accepted the Study Commission's recommendation in providing subrogation "to the extent of benefits paid or payable to *any* cause of action to recover damages for economic loss," Minn.Stat. § 65B.53, subd. 2, and indemnification "enforceable only through mandatory good-faith and binding arbitration procedures," Minn.Stat. § 65B.53, subd. 1 and subd. 3 (emphasis added). Granting the reparation obligor the option of demanding reimbursement from the proceeds of its injured insured's lawsuit against the tortfeasor is consistent with the common law rules regarding subrogation in Minnesota. This court has held that if the insured who has received benefits from his insurance company makes a recovery from a third-party tortfeasor, he has the right first to reimburse himself for his loss and expenses, and then he holds the balance of his recovery in trust for the insurance company. *Hayward v. State Farm Mutual Automobile Insurance Co.*, 212 Minn. 500, 4 N.W.2d 316 (1942); *Flor v. Buck*, 189 Minn. 131, 248 N.W. 743 (1933).

out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by Laws 1974, Chapter 408, there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable or which would be payable but for any applicable deductible. This subdivision shall not bar subrogation and indemnity recoveries under section 65B.53, subdivisions 1 and 2, if the injury had the consequences described in subdivision 3 and a civil action has been commenced in the manner prescribed in applicable laws or rules of civil procedure to recover damages for noneconomic detriment.

Plaintiffs contend that State Farm is not entitled to subrogation because (1) plaintiffs were not fully compensated for their injuries, and (2) permitting subrogation would replenish the limits of their policy with State Farm against which plaintiffs could make future claims, thus allowing a circuitry of action.

In *Pfeffer v. State Automobile and Casualty Underwriters Insurance Co.,* 292 N.W.2d 743 (Minn.1980), this court held that a no-fault insurer is not subrogated under Minn.Stat. § 65B.53, subd. 2 (1974), to the proceeds in a settlement made by its insured with a third-party tortfeasor, where the insured has not been fully compensated for his injury. In *Pfeffer* the injured party *settled* with a third-party tortfeasor. The trial court found that the settlement was not full compensation for the injured insured's loss. In the present action the jury determined that the value of plaintiffs' injuries was $1,147,589.28, $197,589.28 of which were Kenneth Langenberger's stipulated medical expenses, and awarded that amount to plaintiffs. The $197,589.28 of medical expenses included the $70,000 paid by State Farm for basic economic loss. In addition, the trial court denied plaintiffs' post-trial motions for additur or, in the alternative, for a new trial on the issue of damages. The jury has determined what was full compensation for plaintiffs' injuries and this amount has been paid to plaintiffs. Plaintiffs did not appeal on the issue of damages. The question is, therefore, not before the court in this proceeding.

Plaintiffs contend that permitting subrogation would replenish their no-fault policy limits because to hold otherwise would allow State Farm to earn a premium in exchange for no obligation on its part. As stated above, the No-Fault Act as originally passed and as it applies to the instant case granted a right of subrogation to an insurer in any civil action instituted by its insured arising out of an automobile accident. Explaining the reason for retaining subrogation rights in no-fault statutes, one commentator stated:

Subrogation rights also have been retained in many no-fault statutes. Achieving an equitable distribution of losses, a major purpose of the no-fault concept, is frustrated when an insured is allowed to recover first from an insurer and later from the at-fault third party for those same losses. By permitting the insurer a right of subrogation, the possibility of a windfall double recovery is virtually eliminated.

Note, *Subrogation and Indemnity Rights under the Minnesota No-Fault Automobile Insurance Act,* 4 Wm. Mitchell L.Rev. 119, 130 (1978). The same thought was expressed by the authors of the Automobile Liability Study Commission Report to the 1973 Legislature at page 22, where they stated, "Although no statutory restriction should be placed on an injured victim's right to sue in negligence he, of course, should not be allowed to retain both his first party benefits and his tort recovery." To hold as plaintiffs urge would render the rights of subrogation granted reparation obligors under the original No-Fault Act meaningless. Furthermore, the purposes of achieving an equitable distribution of losses and avoiding double recovery would be totally frustrated.

Minn.Stat. § 65B.51, subd. 1 (1974) requires that the value of basic economic loss benefits paid by a no-fault insurer be deducted from an insured's recovery from a negligent third party. The purpose of § 65B.51, subd. 1, is to prevent double recovery. The right of subrogation and the § 65B.51, subd. 1, offset provision of the original No-Fault Act performed much the same function. The legislature apparently decided that the offset provision was sufficient to accomplish the readjustment of losses among reparation obligors responsible for the payment of basic economic loss benefits when it repealed the right of subrogation in cases covered by § 65B.51, subd. 1, in 1977. Act of May 25, 1977, ch. 266, § 4, 1977 Minn.Laws 437, 438–39.

The original act which controls the disposition of this case, however, stated in the last sentence of § 65B.51, subd. 1, that "[t]his subdivision shall not bar subrogation

and indemnity recoveries under section 65B.53, subdivisions 1 and 2, if the injury had the consequences described in subdivision 3 and a civil action has been commenced in the manner prescribed in applicable laws or rules of civil procedure to recover damages for noneconomic detriment." The instant case is clearly one in which subrogation and indemnity are not barred by § 65B.51, subd. 1.

In order to avoid a double recovery by plaintiffs and encourage immediate compensation of accident victims without regard to fault, State Farm must be allowed to enforce its subrogation rights against plaintiff Kenneth Langenberger. Having decided this, we need not discuss the second issue raised.

State Farm is hereby permitted to exercise its subrogation rights against plaintiff Kenneth Langenberger in order to recover the $70,000 paid to him for basic economic loss benefits under the Minnesota No-Fault Automobile Insurance Act.

Reversed and remanded.

COYNE, J., took no part in the consideration or decision of this case.