HAUPTMAN, O'BRIEN, WOLF & LATHROP, P.C., APPELLEE, V.
MILWAUKEE GUARDIAN, A DIVISION OF MILWAUKEE INSURANCE
COMPANY, APPELLANT.

578 N.W.2d 83

Filed May 19, 1998.    No. A-97-428.

Stephen G. Olson II and Suzanne M. Shehan, of Hansen, Engles & Locher, P.C., for appellant.

Terry M. Anderson and Timothy J. O'Brien, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

SIEVERS, MUES, and INBODY, Judges.

SIEVERS, Judge.
This case involves the question of whether Milwaukee Guardian, a division of Milwaukee Insurance Company (Milwaukee), must pay one-third of its $2,000 medical payment subrogation interest to the law firm of Hauptman, O'Brien, Wolf & Lathrop, P.C. (Hauptman, O'Brien). The answer largely depends upon whether the common fund doctrine applies in this case. The district court found that the common fund doctrine was applicable and ordered Milwaukee to pay $666.66 to Hauptman, O'Brien. Milwaukee appeals to this court.

## FACTUAL BACKGROUND
The case was tried to the district court upon the testimony of Timothy O'Brien, an attorney with Hauptman, O'Brien, and statement of the following stipulated undisputed facts. A policy of automobile insurance was issued to Marlene Crouch by Milwaukee on March 4, 1995, which contained medical payment coverage of $2,000. This policy contained a provision giving Milwaukee the right of subrogation for payment of medical expenses against any responsible party from whom its insured recovered damages for medical expenses. On April 10, Crouch was involved in an automobile accident resulting in injuries for which she incurred medical expenses, and pursuant to the policy, Milwaukee made medical payments on behalf of Crouch in the amount of $2,000. The driver of the other vehicle in the accident, Mary Kaufman, was insured by Union Insurance Company. Crouch made a claim against Kaufman for damages

arising out of the accident, and Crouch was represented in her claim by O'Brien.

Milwaukee maintains in-house legal counsel to handle all subrogation matters on its behalf. On July 25, 1995, a claims representative of Milwaukee, Susan Zellhoffer, contacted Union to notify it of Milwaukee's $2,000 subrogation claim. Zellhoffer requested that a separate check be issued directly to Milwaukee in payment of its subrogation claim. In a letter dated October 12, 1995, Zellhoffer again notified Union of Milwaukee's $2,000 subrogation claim. At no time was there any written or oral fee agreement between O'Brien and Milwaukee, and at no time was O'Brien notified by Milwaukee that it was representing its own interests. O'Brien was, however, sending copies of Crouch's medical bills to Milwaukee for payment during the settlement process. Crouch's claim against Kaufman was settled on October 20, for a total of $21,250, and Crouch signed a release of all claims on October 27. O'Brien sent Milwaukee a check for $1,333.34 with a letter explaining that the check was offered as payment in full of the subrogation interest, minus an attorney fee of $666.66. In a letter dated October 22, 1995, Milwaukee returned the check to O'Brien, indicating that Milwaukee was representing its own interests in the subrogation matter and that it would not pay a one-third attorney fee to O'Brien. At no time prior to October 22 was Milwaukee notified by Hauptman, O'Brien of the pending settlement of Crouch's claim or the release executed in favor of Union.

O'Brien testified at trial that the law firm gathered medical records, took photographs, and interviewed police officers and a witness. The total time expended by the firm in the matter was 31.4 hours. O'Brien admitted on cross-examination that some of the hours spent on the case were attributable to paralegals, but he did not have a breakdown of the hours with him. O'Brien testified that the case was settled for $21,250, and that his fee agreement with Crouch was for a one-third contingency fee, plus expenses. O'Brien also testified that Milwaukee contacted him to find out Union's address and also wanted O'Brien to be aware of its subrogation interest.

The district court ruled that Union was negotiating with Hauptman, O'Brien, and not with Milwaukee, and that

Hauptman, O'Brien expended time in creating the settlement fund, while Milwaukee only sent a letter and made a telephone call, but made no other efforts toward the recovery of $21,250. The court found that Hauptman, O'Brien proved by a preponderance of evidence that its efforts produced a fund, from which Milwaukee could be paid its subrogation interest, and that Hauptman, O'Brien was entitled to a fee "one-third of the amount recovered as recited in [Hauptman, O'Brien's] contract with Crouch . . . ." or $666.66.

## ASSIGNMENTS OF ERROR

Milwaukee appeals to this court and, restated, argues that the trial court erred in finding the common fund doctrine applicable and ordering Milwaukee to pay a one-third attorney fee based on the contract between Hauptman, O'Brien and Crouch.

## STANDARD OF REVIEW

Questions of law are presented by the stipulated facts in this case, and an appellate court has an obligation to reach a conclusion independent of that of the trial court in such instances. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994).

## ANALYSIS

This case first requires a determination of whether the common fund doctrine applies under the above-recited facts. The common fund doctrine has its genesis in Nebraska case law in *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961). *Hills* involved a personal injury and automobile damage claim in which the holder of the subrogation interest requested that the claimant's attorney, Lyle Q. Hills, not represent it and that he delete the subrogation claim from the lawsuit. Hills advised the insurer that the cause of action was the claimant's and that it could not be split, and Hills proceeded with negotiations for settlement of the case, resulting in a settlement of $3,500. The subrogation interest was $454.93, and Hills sought a one-third fee of that amount, relying upon his fee agreement with the claimant. The Nebraska Supreme Court noted that the only issue before the court was the extent of Hills' interest in the $454.93. The Supreme Court first dis-

pensed with the notion that compensation for an attorney depends upon an employment contract, because, citing 7 C.J.S. *Attorney and Client* § 193b(2) (1937), an attorney who renders services in recovering or preserving a fund in which a number of persons are interested may in equity be allowed his or her compensation out of the whole fund, where the services are rendered on behalf of and are of benefit to the " 'common fund.' " *Id.* at 132, 109 N.W.2d at 177. The court also found that the fact that the subrogated party had employed counsel and even opposed the suit which ultimately benefited that party would not prevent payment to counsel " 'who has succeeded in recovering or preserving the fund which is brought into the custody of the court.' " *Id.* The *Hills* court then announced:

> The applicable rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees.

*Id.* at 133, 109 N.W.2d at 177. Thus, Hills was entitled to a one-third share of the $454.93.

We next turn to *Krause v. State Farm Mut. Auto. Ins. Co.*, 184 Neb. 588, 169 N.W.2d 601 (1969), which further refined the common fund doctrine. Joseph L. Krause was an attorney who sued State Farm for fees based on his representation of Lowell Roumph, who had sustained property damage in a collision with an individual insured by Dairyland Insurance Company. Roumph had his own insurance with State Farm, which paid for the damage to Roumph's vehicle in the amount of $1,350. Krause negotiated a settlement with Dairyland Insurance. The court recited that throughout those negotiations, State Farm was aware of the efforts of Krause "and acquiesced in, but did not in any way take part in, such negotiations or assist in reaching the settlement." *Id.* at 590, 169 N.W.2d 603. The *Krause* court translated the right of subrogation into a "trust" upon the fund coming into the hands of Roumph which required Roumph as a fiduciary to account for the proportionate share of the proceeds corresponding with the subrogation right. The *Krause* court then stated that the "right to an attorney's fee follows as a mat-

ter of course, since the services rendered by the attorney are beneficial to the administration of the trust and the rights of the beneficiary and as such he is entitled to a proportionate award of an attorney's fee." *Id.* at 593, 169 N.W.2d at 604. However, the *Krause* court also said that it was not holding that State Farm was

> bound by the contract for fees between the plaintiff's attorney and the insured in the action against the tort-feasor. The allowance depends upon consideration of all of the circumstances including the nature of the contract with the insured and the amount and the nature of the services rendered, and the other principles relating to the award of attorney's fees under the law.

*Id.* at 596, 169 N.W.2d at 605-06.

In *Moyer & Moyer v. State Farm Mut. Ins. Co.*, 190 Neb. 174, 206 N.W.2d 644 (1973), the attorney of the injured plaintiff in the underlying tort case filed suit, claiming entitlement to attorney fees for services rendered in allegedly creating a trust from which the insurer had obtained reimbursement of its subrogation. However, the Supreme Court held that the record failed to support a finding that the holder of the subrogation interest received "any substantial benefit from the services of the [injured party's counsel]" because the insurer had been paid long before any fund was created by the efforts of the injured party's counsel. *Id.* at 177, 206 N.W.2d at 646. The underlying tort case in *Moyer & Moyer* occurred when Charles A. Reikofski rear-ended Arnold L. Gruchow, causing a total loss of Gruchow's vehicle, with the result that State Farm, the property damage insurer, paid $442.90 for property damage. However, Reikofski's insurer had written to the State Farm adjuster advising, " '[T]his should be considered a case of liability, and an effort [should be] made to make settlement of the personal injury and property damage claims of [Gruchow].' " *Id.* at 176, 206 N.W.2d at 646. The Supreme Court held that "[t]he property damage claim was, for all practical purposes, a liquidated amount." *Id.* at 176-77, 206 N.W.2d at 646. Nearly 18 months before the case went to trial on the personal injury claim, Reikofski's insurer had paid State Farm for the property damage. Thus, the court concluded that State Farm did not receive

"any substantial benefit from the services of the [injured party's counsel,] and the district court's award of a fee was reversed." *Id.* at 177, 206 N.W.2d at 646.

From *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961), *Krause v. State Farm Mut. Auto. Ins. Co.*, 184 Neb. 588, 169 N.W.2d 601 (1969), and *Moyer & Moyer, supra*, we summarize that the common fund doctrine applies when an attorney (1) expends time and effort in (2) creating a common fund in which others are interested, and (3) the party with the subrogation interest has substantially benefited from the attorney's efforts in creating the fund. Additionally, the amount of the attorney fee awarded does not necessarily correspond with the contract between the attorney and the insured, but instead depends on the nature of the services rendered and the general considerations applicable to court awards of attorney fees.

In this case, the evidence shows that Hauptman, O'Brien expended some effort to create a fund in which Milwaukee had a small interest. Milwaukee argues that Hauptman, O'Brien conferred no substantial benefit on it because liability was clear and the medical bills were a liquidated amount. However, the evidence shows nothing about the accident and does not demonstrate whether liability was obvious or razor thin, nor does the record reveal anything about the injury except that over $4,000 in medical bills were incurred. Moreover, no evidence was presented as to how Union viewed the case. Because Hauptman, O'Brien seeks the fee, it was its burden to prove entitlement to the fee. Thus, it was Hauptman, O'Brien's burden of proof to show that it did confer a substantial benefit on Milwaukee. O'Brien testified that his firm expended approximately 31 hours in handling the claim, an unspecified portion of which was "paralegal time."

Milwaukee argues that it was not put on notice that there was a pending settlement and thus cannot be held to have acquiesced in it. However, the stipulated facts show that Hauptman, O'Brien was sending Milwaukee Crouch's medical bills, and O'Brien testified that a representative from Milwaukee called him to obtain Union's address and to inform O'Brien of its subrogation interest. In light of this, we find it difficult to accept

Milwaukee's argument that it was unaware of the actions being taken by Hauptman, O'Brien to resolve the claim and such "defense" is not part of our decision.

The district court reasoned that "[t]here is no evidence that [Milwaukee] engaged in presenting the details of the claim, answered questions, engaged in the give and take of negotiations, or did anything else to produce recovery of $21,250." The flaw in this reasoning lies in that Milwaukee is not interested in anything over $2,000. In short, whether Crouch gets $2,500 or $2.5 million, Milwaukee's interest is the same—$2,000—which means that its approach to the case is materially different from that of Crouch's lawyers, who are charged with collecting for all of her damages. Milwaukee's concern was only with what might be called the "easy dollars," i.e., the first $2,000.

The key to this case, and undoubtedly others similar to it, is the record created by counsel who seeks the fee, because the burden to prove entitlement to the fee is on counsel. The necessary evidence will obviously vary from case to case. But the evidence which shows that the holder of the subrogation interest received a substantial benefit from counsel's efforts also coincidentally helps prove the factors for awards of attorney fees under *Krause, supra*. The general considerations for awards of attorney fees are well known: the services actually performed, the amount in controversy, the nature of the case, the results obtained, the extent of preparation of the case, the difficulty of the questions involved, the skill required, the customary charges of the bar for similar work, and the character and standing of the attorney. See *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

The proof of substantial benefit to Milwaukee is incomplete. Missing is evidence of the amount in controversy (over and above the medical bills which exceeded the $2,000), the difficulty of the questions involved (assessment of liability and damages), and the nature of the case (for example, obvious liability with generous coverage versus questionable liability with minimum liability limits). In concluding that these are very material elements of Hauptman, O'Brien's burden of proof, we bear in mind two important points: (1) While the common fund doctrine obligates a subrogated carrier to pay a fee, it does not make the

fee contract between the attorney and the insured automatically binding on the holder of the subrogation interest; and (2) in a case such as this, with $4,369.64 in medical bills and only $2,000 of medical coverage, there is little "contingent" about the recovery for the medical payments. Contingencies arise, for example, when liability of the tort-feasor is something other than obvious, when the defendant fails to reasonably settle the case, or where the injured parties' damages exceed the liability coverage. See *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993). The evidence in the record does not address these matters. These are things that the trial court did not know, nor do we, but they are necessary to enable a court to decide the issue of whether a fee is owed and, if so, how much. Merely proving that time was spent on a case does not satisfy the prerequisite of the common fund doctrine as it has evolved. Under the common fund doctrine, the attorney is entitled to a fee " 'only where his services are rendered on behalf of, and are a benefit to, the common fund.' " *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 132, 109 N.W.2d 174, 177 (1961).

Thus, for these reasons, we find that Hauptman, O'Brien failed to carry its burden of proving a substantial benefit to Milwaukee. Even if it could be said that a substantial benefit was proved, Hauptman, O'Brien failed to adduce evidence upon which the amount of a fee to which it might be entitled could be set. For these reasons, we reverse the decision of the district court and remand the matter for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.