IN RE ESTATE OF BUDDIE STULL, ALSO KNOWN AS
BUDDIE WILLIAM STULL, DECEASED.
ROBERT ANDERSON ET AL., APPELLANTS, V.
E. MICHAEL SLATTERY ET AL., APPELLEES.

622 N.W. 2d 886

Filed March 2, 2001. Nos. S-99-1253, S-00-055.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellants.

William R. Reinsch, of Reinsch & Slattery, P.C., for appellee E. Michael Slattery.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This case is a remand from the Nebraska Court of Appeals to the county court for Cass County, Nebraska, to determine the reasonable fee to be paid to Attorney E. Michael Slattery for his legal services. Slattery performed services in securing a settlement under the common fund doctrine for the residuary beneficiaries of the estate of Buddie Stull, also known as Buddie William Stull, in the sum of $98,500.96. On remand, the county court awarded Slattery an amount equal to one-third, or the sum of $32,758.87, two-thirds of which, $21,839.24, would be paid from several of the residuary beneficiaries' share of the residuary estate, plus the sum of $57 court costs. The beneficiaries will be referred to herein as the "objectors."

## BACKGROUND

Slattery filed a will contest on behalf of one of the residuary beneficiaries, Rosie Wolski, challenging two charitable bequests of the estate of Stull. Slattery, on behalf of Wolski, initially challenged the Stull will on the bases of incapacity and undue influence. After some discovery was completed, Slattery changed the nature of the claim to a claim that the real property bequeathed to the two charities was in violation of the rule against perpetuities. The charitable bequests of the real property in the will provided that "at no time [could the charitable beneficiary] sell, mortgage, dredge, remove aggregate from, or otherwise alienate the real property." About the same time the legal theory was changed, Wolski became concerned that she did not have suffi-

cient funds to proceed, and Wolski and Slattery, therefore, entered into a one-third contingent fee agreement providing that Slattery would be paid one-third of any amounts that he recovered on her behalf and, if his efforts were not successful, would be paid nothing.

Slattery negotiated a settlement with the two charities which resulted in a substantial increase in the residuary estate in the sum of $98,500.96. This settlement was agreed to by all of the residuary beneficiaries and was approved by the county court. Slattery claimed that the settlement he negotiated was on behalf of the entire residuary estate. Slattery had a one-third contingent fee agreement with Wolski, but did not have any agreement as to representation or fees with the other residuary beneficiaries.

Slattery filed a petition for distribution of the funds of the settlement to the residuary beneficiaries and an application for the payment of attorney fees from the residuary estate. It was Slattery's theory that his efforts had resulted in a benefit to the residuary estate of $98,500.96 and that under the common fund doctrine, he is entitled to recover attorney fees from settlement proceeds. Slattery prayed for a fee of $32,833.65, or one-third of the amount recovered, plus costs of $57.

The objectors filed an objection to the application for attorney fees, claiming that the common fund doctrine was inapplicable and further that the fees requested were not fair and reasonable. The county court awarded Slattery one-third of the estimated settlement funds from the residuary estate. The objectors appealed this decision. The Court of Appeals in *In re Estate of Stull*, 8 Neb. App. 301, 593 N.W.2d 18 (1999), ruled that the common fund doctrine did apply to the facts of this case and that what is a reasonable fee to be paid from the common fund under the totality of the circumstances is a question not answered by simply applying the fee agreement between Slattery and Wolski. The Court of Appeals remanded the cause for the determination of whether the attorney fee of nearly $33,000 was reasonable by addressing the factors laid out in *Hauptman, O'Brien v. Milwaukee Guardian*, 7 Neb. App. 60, 578 N.W.2d 83 (1998).

In its remand to the county court, the Court of Appeals stated that the county court did not address any of the factors deemed

salient in *Hauptman, O'Brien v. Milwaukee Guardian, supra.* These factors as stated in *Hauptman, O'Brien* are "the services actually performed, the amount in controversy, the nature of the case, the results obtained, the extent of preparation of the case, the difficulty of the questions involved, the skill required, the customary charges of the bar for similar work, and the character and standing of the attorney." 7 Neb. App. at 67, 578 N.W.2d at 88.

In the remanded hearing, one of Slattery's expert witnesses was Attorney Keith Frederick. Frederick based his testimony on reviewing (1) the entire court file, together with exhibits and the bill of exceptions from the first trial; (2) Slattery's fee application, knowing that the Court of Appeals had determined there was a common fund; and (3) Slattery's own file on this case. Frederick said he based his opinion solely on Slattery's work in construing the will and the settlement agreements.

It is to be noted that the only testimony at the hearing was from Slattery's expert witnesses, Frederick and Attorney David Chebatoris. The objectors did not present any witnesses. Frederick described Slattery's legal theory and testified that there were 28 or 29 separate pleadings along with the settlement agreements and that it required a high degree of skill to prepare the legal theory and deal with the numerous individuals involved in this litigation. Frederick stated the difficulty with the questions involved was that if the will was set aside, there were prior wills that were still in existence and that therefore to obtain a settlement that "gets something for the residuary beneficiaries was quite a feat." The amount in controversy was testified by Frederick to be approximately $250,000 and that customary charges for this type of case could be either a straight hourly rate or a contingent fee based on the results. Frederick stated there were several services performed as shown on the court's docket sheet, such as different court hearings or appearances, that did not appear to be listed on Slattery's time charges. Slattery's listed time charges were 104.8 hours.

On cross-examination, Frederick said that based on reading the briefs, had the case gone to trial, Slattery's chances were better than 50-50. Frederick did not find any substantial discovery "as far as written documents in the court file." Frederick testified that he agreed with the objectors that the case involved basi-

cally a legal question, but that the one-third contingent fee was reasonable.

Chebatoris testified that he had known Slattery for over 20 years and described Slattery's character as being excellent, that Slattery was well respected in the community and legal profession, and that Slattery had an excellent reputation.

Slattery argued that Frederick's testimony supplied all of the elements of *Hauptman, O'Brien v. Milwaukee Guardian*, 7 Neb. App. 60, 578 N.W.2d 83 (1998), with the exception of Slattery's standing in the legal community, which testimony was provided by Chebatoris.

Frederick testified, and the record reflects, the following with regard to Slattery's fee: (1) that a contingent fee would be appropriate when the client felt that he or she could not afford the hourly time charges but wanted to proceed in some fashion with the matter; (2) that the customary charges of the bar for similar work provided by Slattery would be one of two forms, either an hourly rate, if the client was able to pay it, or a contingent fee based on the results; (3) that Frederick is familiar with the customary charges for services similar to those rendered by Slattery; (4) that assuming Slattery had a good reputation and standing in the community, it was his opinion that a one-third contingent fee, in this case, nearly $33,000, is fair and reasonable; and (5) that Slattery's rate of $125 per hour was reasonable based on Frederick's familiarity with what attorneys in Cass County with 20 to 25 years of experience were charging during the relevant time period.

The objectors argued that although the services performed by Slattery totaled 104.8 hours, one-half of that time was spent obtaining signatures from all the residuary beneficiaries for the settlement agreements. It should be noted that the requirement that all the residuary beneficiaries sign the settlement agreements was a requirement made by the county court prior to approving the settlement which produced the common fund. The objectors further claim the issues involved did not require a great deal of legal experience; that Slattery did not tell the objectors that the chances of success were greater than 50-50; and further that although the total value of the real property was $250,000, the residuary estate received only 40 per-

cent of that amount, and that therefore, Slattery does not deserve the maximum fee.

Slattery stated that his standard fee was $125 per hour. The objectors urged that Slattery's fee be 104.8 hours times $125 per hour for a total fee of $13,100.

## ASSIGNMENTS OF ERROR

The objectors assign that the county court erred in (1) determining the amount of the attorney fees awarded to Slattery, (2) applying a percentage of one-third to the entire common fund, and (3) failing to consider all of the factors in the award of a "reasonable fee."

## STANDARD OF REVIEW

■ When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997).

## ANALYSIS

■ The objectors did not seek further review of the original decision of the Court of Appeals, and therefore, the issue of whether the common fund doctrine applied becomes the law of the case. The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998); *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998). This same decision by the Court of Appeals required the county court, on remand, to apply the factors for attorney fees under *Hauptman, O'Brien v. Milwaukee Guardian*, 7 Neb. App. 60, 578 N.W.2d 83 (1998), in determining a reasonable fee to be awarded to Slattery under the common fund doctrine.

With regard to services actually performed, we note that in exhibit 6, Slattery's exhibit setting out his time and expenses, no charges were made for mailings, copy costs, postage, et cetera. The total hours expended by Slattery, according to exhibit 6, are 104.8 hours. Frederick testified that from a review of the court's docket sheet, there were several hearings held in May and

October 1996 and January and December 1997 and that these hearings were not listed on exhibit 6.

From this review, Frederick concluded that Slattery had actually devoted more time to the case than that reflected in his itemized statement. A significant portion of Slattery's time was expended in obtaining the residuary beneficiaries' approvals of the settlement agreements with the charitable beneficiaries. This action was required by the county court prior to its approving the settlement and is, therefore, a benefit to all of the residuary beneficiaries, including the objectors.

The second factor according to *Hauptman, O'Brien* is the amount in controversy. Frederick testified that this amount was $250,000, while the objectors claim that the amount was $98,000, which is 40 percent of the total value of the real property. It is true that the gross value of the real property was $250,000 and that the residuary estate received only $98,000, but the attorney fee was based on $98,000, and not $250,000.

The third factor under *Hauptman, O'Brien* is the nature of the case. This case initially started as a will contest alleging incapacity and undue influence and evolved into whether the devise of the real property to the charities with the limitation that the land could not be dredged or sold in any way violated the rule against perpetuities. The settlement negotiations with the charitable beneficiaries that produced the $98,000 for the residuary estate presumably were brought about by Slattery, acting for his client, Wolski, pursuing the rule against perpetuities theory. This theory was pursued by Slattery after he found in discovery that the initial theory of undue influence would in all likelihood not be successful.

The fourth factor under *Hauptman, O'Brien* is the results obtained. The settlement agreements with the two charities resulted in an amount to the residuary beneficiaries of approximately $98,276.60. Had Slattery, on behalf of Wolski, never presented this claim, the result to the residuary estate would have been zero.

The fifth factor under *Hauptman, O'Brien*, the extent of preparation of the case, can be judged from exhibit 6, showing an expenditure of 104.8 hours by Slattery, and, in addition, Frederick's testimony that from his review of Slattery's file and

the court file, Slattery devoted time to the case in addition to that reflected on exhibit 6.

As to the sixth and seventh factors of *Hauptman, O'Brien*, the difficulty of the questions involved and the skill required, Frederick praised Slattery's legal theory as being one that other attorneys may not have recognized. Frederick also testified that Slattery employed a complex legal standard and that it took skill to prepare the legal theory and to deal with the various individuals in the case. Frederick said the difficulty with the questions involved was that if the will was set aside, there were prior wills that were still in existence.

The eighth factor in *Hauptman, O'Brien v. Milwaukee Guardian*, 7 Neb. App. 60, 578 N.W.2d 83 (1998), is the customary charges of the bar for similar work.

Frederick testified that either an hourly rate or a contingent fee would be appropriate for legal representation in a case of this nature. While a contingent fee agreement between Slattery and Wolski does not control what is a reasonable fee in this case, the contingency that Slattery would be paid nothing for his services, if unsuccessful, is to be taken into consideration in determining a reasonable fee.

The last factor of *Hauptman, O'Brien* is the character and standing of the attorney. Chebatoris was the only witness on this subject and testified that he had known Slattery for 20 years, that Slattery's character was excellent, that Slattery was well respected in the community and legal profession, and that Slattery had an excellent reputation.

We conclude that upon remand from the Court of Appeals with directions to consider only the amount of a reasonable fee to be awarded to Slattery for his services in obtaining the common fund of $98,276.60, the county court did not abuse its discretion in awarding Slattery a fee from the common fund of one-third and, further, that $21,839.24 of that sum should be paid from the objectors' share. We note that Wolski was obligated by the contingent fee agreement with Slattery to pay one-third of the residuary estate attributable to her and that the objectors in this case are simply paying the same amount to Slattery for his services in producing the common fund for the benefit of the objectors.

## CONCLUSION

For the reasons set out above, we conclude that the county court did not abuse its discretion in determining that a fair and reasonable fee to be paid to Slattery is one-third of the sums recovered on behalf of the residuary estate from the common fund.

AFFIRMED.