JOSHUA MCGRATH, APPELLEE, V. CITY OF OMAHA,
A MUNICIPAL CORPORATION, APPELLANT.
713 N.W.2d 451

Filed May 5, 2006.   No. S-04-1239.

Thomas O. Mumgaard, Deputy Omaha City Attorney, for appellant.

E. Terry Sibbernsen and Andrew D. Sibbernsen, of Sibbernsen & Strigenz, P.C., for appellee.

William F. Austin, of Erickson & Sederstrom, P.C., for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

STEPHAN, J.

Joshua McGrath sustained serious injuries when a vehicle which he was operating was struck by a vehicle operated by Michael Barnes, who was the subject of a vehicular pursuit by Omaha police. McGrath brought this action against the City of Omaha (the City) under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1997 & Supp. 1999), alleging negligence on the part of the officer conducting the pursuit and strict liability under § 13-911. Following a bench trial, the district court for Douglas County found that the officer was not negligent but held that the City was strictly liable based on a finding that McGrath's injuries and damages were proximately caused by the officer's actions during the vehicular pursuit. The court determined that McGrath sustained damages in the amount of $503,123.66. Pursuant to § 13-911(2), the court allowed the City a credit in the amount of $48,000, representing insurance payments made to McGrath, less the attorney fees incurred in obtaining the recovery. The City appeals, contending that the court erred in its determination of proximate cause and in calculating the credit. We affirm the judgment of the district court as modified.

## BACKGROUND

In the early morning hours of April 14, 2000, Barnes and four companions left an Omaha nightclub and proceeded north on 72d Street in a 1982 Buick, with Barnes at the wheel. After weaving through construction areas on 72d Street, Barnes brought the vehicle to an abrupt, sliding stop when he became aware of a red traffic signal at the intersection of 72d and Dodge Streets. Omaha Police Sgt. John Sears observed Barnes' erratic driving from his police cruiser, where Sears was also stopped at the same intersection, but in a southbound direction on 72d Street, waiting to turn east onto Dodge Street. When the light turned green and Barnes proceeded through the intersection, Sears made a U-turn and followed Barnes as he proceeded north on 72d Street and then turned east onto Cass Street. While proceeding east on Cass Street between 72d and 69th Streets, Sears activated his cruiser's overhead red flashing lights in an attempt to signal Barnes to pull over. Barnes did not comply, but instead,

accelerated and turned north onto 69th Street, at which point, Sears began pursuit and radioed for assistance from a police helicopter. Initially, and at several times during the pursuit, Sears attempted to activate the siren of his police cruiser, but he was never able to do so because a control knob was missing. Sears continued to pursue Barnes north on 69th Street at speeds ranging from 50 to 70 miles per hour.

As Barnes drove through the intersection of 69th and Blondo Streets, Sears was one to three blocks behind him. Sears observed that Barnes narrowly avoided colliding with a vehicle as Barnes drove through the intersection. Sears decided to slow his cruiser and terminate the pursuit at approximately 69th and Blondo Streets, where he turned off his cruiser's flashing lights. Sears lost sight of the Buick when it reached 69th and Lake Streets. Proceeding in "search mode," Sears turned right onto Lake Street and then turned left onto 68th Street with his cruiser's flashing lights turned off.

After turning right at 69th and Lake Streets, Barnes proceeded one block east and then turned south onto 68th Street. Barnes still saw the cruiser's flashing lights when he turned at Lake Street, and one of his passengers last saw the cruiser's flashing lights reflecting off nearby houses when Barnes was proceeding south between Lake and Grant Streets on 68th Street. After proceeding south on 68th Street for one block, Barnes turned left onto Grant Street, still believing the police were pursuing him and attempting to avoid police contact. Barnes proceeded east down a steep hill on Grant Street, reaching speeds exceeding 65 miles per hour. He did not stop for any of the stop signs between 68th and 65th Streets on Grant Street. As he proceeded east on Grant Street, Barnes' passengers told him they could no longer see the police cruiser. Within approximately 30 seconds of the last sighting of the cruiser's flashing lights, Barnes ran the stop sign at the intersection of 65th and Grant Streets and collided with a northbound pickup operated by McGrath. The collision tore the pickup in half, and the front section was propelled into a tree and exploded. McGrath and his passenger, Jimmie Joe Staley, both sustained severe burn injuries.

After complying with the notice provisions of the Political Subdivisions Tort Claims Act, McGrath and Staley filed separate

actions against the City in the district court for Douglas County. The actions were consolidated for trial and discovery. Following trial, the district court made written findings of fact in which it determined that the vehicular pursuit was the proximate cause of the collision and resulting injuries to McGrath and Staley. In making these findings, the court rejected the City's argument that Barnes should have known that the pursuit had ended before he turned east onto Grant Street.

The district court found that McGrath suffered second- and third-degree burns to 30 percent of his body, a right maxillary sinus fracture, a pelvic fracture, and a closed head injury. After the accident, McGrath was immediately transported to a hospital and was a patient there between April 14 and 28, 2000. McGrath was left with permanent scars on his face, arms, and other parts of his body and incurred medical expenses of $82,323.66, lost wages of $20,800, and a permanent disability impairment of 21 percent.

As compensation for his injuries, the district court initially awarded McGrath $503,123.66. The court later amended the judgment to allow the City a credit pursuant to § 13-911(2) in the amount of $48,000, representing a $72,000 payment which McGrath recovered from insurance carriers, reduced by $24,000 that he paid in attorney fees.

## ASSIGNMENTS OF ERROR

The City assigns, restated, that the district court erred (1) in concluding that the motor vehicle pursuit was the proximate cause of damages within the scope of § 13-911 and (2) in improperly applying § 13-911(2) by deducting attorney fees from the reimbursement for insurance payments.

## STANDARD OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong. *Meyer v. State*, 264 Neb. 545, 650 N.W.2d 459 (2002). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Tadros v. City of Omaha*, 269 Neb. 528, 694 N.W.2d 180 (2005).

## ANALYSIS

### PROXIMATE CAUSE

The parties stipulated that McGrath, like Staley, was an innocent third party within the meaning of § 13-911. The determination of the City's liability to both McGrath and Staley was based upon the same facts. For the reasons discussed in *Staley v. City of Omaha, post* p. 543, 713 N.W.2d 457 (2006), we conclude that the district court did not err in finding that McGrath's injuries were proximately caused by the nonnegligent actions of an Omaha police officer, Sears, during a vehicular pursuit, thereby triggering the City's strict liability under § 13-911.

### CREDIT

The City contends that the district court erred in calculating the amount which McGrath was required to reimburse the City, in the form of a credit against the judgment, for insurance payments he received. Section 13-911(2) provides in relevant part:

> Upon payment by a political subdivision of those damages sustained by an innocent third party [proximately caused by a police pursuit], whether upon voluntary settlement or in satisfaction of a judgment, the political subdivision shall be entitled to reimbursement of the amount of damages paid by the political subdivision from each and all of the following sources:
>
> . . . .
>
> (c) Every insurer or self-insurance surety of either the driver of the fleeing vehicle . . . .
>
> (d) Any uninsured or underinsured motorist insurer or self-insurance surety legally liable to the innocent third party . . . .

McGrath received $22,000 from Barnes' insurer and $50,000 from his own underinsurance carrier. Of this amount, he paid $24,000 in attorney fees and used the remainder to pay other expenses relating to the accident, including some of his medical expenses. In calculating the amount which McGrath was required to reimburse the City under § 13-911(2), the district court deducted the attorney fees from the insurance payments and awarded the City a credit against the judgment in the net amount of $48,000, reasoning that attorney fees are generally deductible

in similar circumstances. The court did not cite any legal authority for this proposition.

Section 13-911(2) lists sources from which a political subdivision held strictly liable to an innocent third party as a result of a vehicular pursuit may obtain reimbursement of damages it has paid. The statute does not specifically address the issue of how a credit against a judgment is to be calculated if the reimbursement source has made payment directly to the injured party through the efforts of an attorney prior to the entry of the judgment against the political subdivision.

The payments to McGrath by Barnes' liability insurance carrier and his own underinsured motorist carrier constituted a fund in which both McGrath and the City had an interest. Had McGrath not succeeded in establishing the City's liability for his injuries, the insurance payments would likely have been his only recovery. However, when the City's liability was established, it acquired a statutory right to reimbursement with respect to the aforementioned insurance payments which had been made to McGrath. We agree that this right is enforceable as a credit against the judgment in favor of McGrath against the City. The question is whether the credit can be calculated so as to, in effect, require the City to pay McGrath's attorney fees in connection with recovery of the insurance benefits. The City argues that there is no statute or common-law principle which would permit this result. McGrath does not provide any legal authority, but argues that because the City is the beneficiary of the efforts of his attorney in obtaining the insurance recovery, it should be responsible for the fees.

Although it is certainly not clear from the record or briefs, we perceive McGrath's argument and the reasoning of the district court to be premised upon the common fund doctrine. Based upon the holdings of this court in *Moyer & Moyer v. State Farm Mut. Ins. Co.*, 190 Neb. 174, 206 N.W.2d 644 (1973); *Krause v. State Farm Mut. Auto. Ins. Co.*, 184 Neb. 588, 169 N.W.2d 601 (1969), and *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961), the Nebraska Court of Appeals summarized the common fund doctrine as being applicable

> when an attorney (1) expends time and effort in (2) creating a common fund in which others are interested, and (3)

the party with the subrogation interest has substantially benefited from the attorney's efforts in creating the fund. Additionally, the amount of the attorney fee awarded does not necessarily correspond with the contract between the attorney and the insured, but instead depends on the nature of the services rendered and the general considerations applicable to court awards of attorney fees.

*Hauptman, O'Brien v. Milwaukee Guardian*, 7 Neb. App. 60, 66, 578 N.W.2d 83, 87 (1998). The court further noted that the key to establishing that the beneficiary of the common fund should be responsible for an attorney fee is "the record created by counsel who seeks the fee, because the burden to prove entitlement to the fee is on counsel." *Id.* at 67, 578 N.W.2d at 88. The general considerations for awards of attorney fees are well known: the services actually performed, the amount in controversy, the nature of the case, the results obtained, the extent of preparation of the case, the difficulty of the questions involved, the skill required, the customary charges of the bar for similar work, and the character and standing of the attorney. *Id.*

Assuming without deciding that the common fund doctrine would apply in the circumstances presented here, McGrath had the burden of proving that the City should be charged, in the form of a reduced credit under § 13-911(2), with all or a portion of the attorney fees McGrath paid. Although it is apparent that the City received a benefit from the efforts of McGrath's attorney in obtaining the insurance recovery, there is no evidence with respect to the nature of the services performed by the attorney and little evidence of the other factors relevant to the reasonableness of the attorney fees. See, *Krause v. State Farm Mut. Auto. Ins. Co., supra*; *Hauptman, O'Brien v. Milwaukee Guardian, supra*. Accordingly, we conclude that the district court erred in not crediting the City for the full amount of insurance benefits received by McGrath.

## CONCLUSION

We conclude that the district court did not err in finding that McGrath's injuries were proximately caused by the nonnegligent actions of an Omaha police officer, Sears, during vehicular pursuit, triggering the City's strict liability under § 13-911(1).

However, the district court erred in not awarding the City a credit against the judgment in the full amount of insurance payments made to McGrath from sources specified in § 13-911(2)(c) and (d). We modify the judgment by increasing the amount of the credit from $48,000 to $72,000 and affirm as modified.

AFFIRMED AS MODIFIED.

WRIGHT, J., not participating.